Clara **MONTIJO REYES,** et al., Plaintiffs,

v.

**UNITED STATES of America,** Defendant.

No. CIV. 01–2282(RLA).

United States District Court, D. Puerto Rico.

Dec. 13, 2004.

Miguel Sarriera Román, Quebradillas, PR, for Plaintiffs.

A.U.S.A. Isabel Muñoz Acosta, United States Attorney's Office, San Juan, PR, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ACOSTA, District Judge.

Plaintiffs filed the instant complaint under the Federal Tort Claims Act ("FTCA") alleging that material deposited along the beach/shoreline across from their homes by the U.S. Army Corps of Engineers ("Corps") purportedly resulted in sand and dust being blown onto their properties which in turn caused them damages.

Defendant filed a motion for summary judgment alleging that the claim asserted in the instant complaint is precluded by the discretionary function exception to the FTCA and is not viable under local law. Plaintiffs opposed claiming that the conduct at issue was carried out in violation of state law and thus, outside the ambit of the aforementioned exception and actionable under Puerto Rico negligence provisions.

The court having reviewed the arguments of the parties hereby finds as follows.

### Factual Background

On January 20, 1999 the Corps proposed the emergency dredging of the Arecibo Harbor by public notice. The notice described the project as involving approximately 60,000 to 80,000 cubic yards of shoal material from the federally authorized navigation channel at the Arecibo Harbor. The material to be dredged was described as "predominantly sand with some silt and shell." The notice further indicated that the dredged material would be temporarily stockpiled on the beach adjacent to the harbor and then hauled via dump truck to an upland disposal site on Port Authority Property inasmuch as this local agency had claimed an interest in retaining the dredged material. Near-shore placement of the dredged material was described as the next alternative had the Port Authority not shown an interest.

An Environmental Assessment was prepared for the project. The Port Authority decided it was no longer interested in retaining the dredged material. Thus, upland disposal was discarded and the option of redepositing the dredged materials into near-shore circulation was selected instead. According to the Environmental Assessment, "the material to be removed is considered suitable for downdrift beach and shore nourishment. Erosion, partly related to sea level rise, has been an ongoing problem along the Arecibo coast for many years... Therefore, it is appropriate and beneficial to dispose of the dredge material back into the natural littoral drift of the region." ¶ 2.03. Further, the amount of the material to be dredged was calculated at 150,000 cubic yards instead.

Coordination of the Environmental Assessment was carried out with both federal and Commonwealth regulatory agencies, including the Puerto Rico Department of Natural and Environmental Resources, the Puerto Rico Ports Authority and the U.S. Fish and Wildlife Service ("USFWS"). The Puerto Rico Environmental Quality Board ("EQB") issued a water quality certification and the Planning Board of the Office of the Governor of Puerto Rico issued a Certification of consistency with the Commonwealth's Coastal Management Program. Declaration of Richard E. Bonner ¶ 4.

Work began on June 9, 2000 using the near-shore disposal site as described in the

Environmental Assessment. However, shortly thereafter the USFWS discovered that the dredged material was being deposited on a coral hard-ground community. Work was halted while the Corps consulted with the USFWS and the National Marine Fisheries and obtained an exception to the water Quality Certificate from the EQB allowing disposal of sand on the beach itself.[1] Declaration of Richard E. Bonner ¶ 6.

The new disposal method was proposed in order to: protect essential fish habitat under the Magnuson–Stevens Fishery Conservation and Management Act and the coral hardbottoms as well as help combat the beach erosion problems along the Arecibo coast. Declaration of Richard E. Bonner ¶ 6.

A Finding of No Significant Impact was prepared on behalf of the Corps on June 30, 2000 changing the placement of material "along the shoreline/beach instead of the near-shore disposal site to minimize impacts to hardgrounds and potential sea turtle habitat." ¶ e Further, the document limited "any additional beach placement to a berm width to 75' across the top from sea wall or beachhead (toe of fill limited to 3000' from sea wall or beachhead)." *id.*

As a result thereof almost the entire amount of dredged material was placed directly on the badly eroded beach in front of Paseo Victor Rojas across from plaintiffs' properties.

Dredging work was completed approximately on July 1, 2000. The contractor continued to work along the shoreline for several days thereafter to give final grades to the beach.

As a result of the change, the beach height increased approximately fifteen feet along the entire beach area and was leveled with Paseo Victor Rojas to an estimated width of 1000 feet.

The limits on the beach placement imposed by the NMFS caused a sand pile that rose above the high tide line, but the renourished beach was never higher than the street.

When the project was complete, the sand was actually below street level. The street was protected from blowing sand by a stone concrete wall and silt fence installed by the contractor.

Protesting surfers repeatedly damaged or demolished the silt barrier and it had to be rebuilt several times.

### Summary Judgment

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Sands v. Ridefilm Corp.*, 212 F.3d 657, 660–61 (1st Cir.2000); *Barreto–Rivera v. Medina–Vargas*, 168 F.3d 42, 45 (1st Cir.1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. *De-Novellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d

---

**1.** No further action appears on this matter except for a reference in the Finding of No Significant Impact ¶ c which states:

Puerto Rico water quality standards will be met. A waiver was granted by the Puer-

to Rico Environmental Quality Board on 6 August 1999... This action was previously certified by EQB... on February 20, 1981 (a waiver of Water Quality Certification).

746, 748 (1st Cir.1994); *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. *Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir.1995).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Navarro v. Pfizer Corp.,* 261 F.3d 90, 94 (1st Cir.2001); *Grant's Dairy v. Comm'r of Maine Dep't of Agric.,* 232 F.3d 8, 14 (1st Cir.2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". *Lopez–Carrasquillo v. Rubianes,* 230 F.3d 409, 412 (1st Cir.2000); *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994); *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

### Discretionary Function Exception

■ As previously indicated by the court in this case,[2] the United States as sovereign is immune from suit except to the extent it has consented to be sued. The FTCA is one such waiver and authorizes suits for damages caused by the negligent acts or omissions of its agents or employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). This waiver, however, is not unlimited. The FTCA has specifically excluded "claim[s] . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or

duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Should the court find this exception applicable it will lack subject matter jurisdiction to entertain the claims asserted in the complaint. *Wood v. United States,* 290 F.3d 29, 35 (1st Cir.2002).

■ Two factors will be examined in determining the applicability of the discretionary function exception, i.e., the existence of discretion and whether or not the type of discretion allowed warrants public policy scrutiny. Initially the court must ascertain whether the particular conduct at issue involves discretion, i.e., an element of judgment or choice on the part of the agency or employee. In the event that discretion is present the court must then decide whether the discretion in dispute entails public policy considerations. *United States v. Gaubert,* 499 U.S. 315, 322–23, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz v. United States,* 486 U.S. 531, 536–37, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *Muñiz–Rivera v. United States,* 326 F.3d 8, 15 (1st Cir.2003); *Shansky v. United States,* 164 F.3d 688, 691 (1st Cir. 1999).

■ If there is no room for choice the § 2680 exception is inapposite. *Wood,* 290 F.3d at 36; *Magee v. United States,* 121 F.3d 1, 4 (1st Cir.1997).

[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive. And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for

---

**2.** *See,* Order Denying Motion to Dismiss    (docket No. 21).

the discretionary function exception to protect.

*Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954.

■ If the court determines that the government actions are indeed discretionary whether or not these were negligently carried out is of no consequence for purposes of § 2680(a). *Magee v. U.S.*, 121 F.3d 1, 5 n. 2 (1st Cir.1997); *Attallah v. United States*, 955 F.2d 776, 784 n. 13 (1st Cir.1992). "[O]nce governmental actions have been labeled discretionary, it is immaterial whether those actions have been negligently performed for purposes of determining the applicability of the exception in Section 2680(a)." 14 Wright, Miller & Cooper § 3658.1 at 639.

## No Discretion

■ The essence of plaintiffs' argument is that selection of the disposal site entailed no discretion on the part of the corps because the law mandates that prior to the discharge of dredged material into waters of the United States it had to obtain a certificate or waiver from the local EQB.[3]

It is undisputed that choices had to be made by the Corps in selecting the particular site for disposal of the dredged material in this case which discretion was governed by significant environmental public policy considerations.

As clearly indicated by Richard E. Bonner, the Corps' Deputy District Engineer for Programs and Project Management in his declaration, prior thereto various alternatives were considered, i.e., upland disposal versus near-shore circulation. Further, in this particular case the selection of a site for depositing materials removed from an emergency maintenance dredging of the Arecibo Harbor was made by the Corps taking into account myriad environmental concerns in coordination with several state and federal agencies. Specifically, erosion along the coast was of paramount importance. Subsequently, the change of location was brought about by the unforeseen negative impact upon essential fish habitat and coral hardbottoms in the near site designated area.

Plaintiffs contend that there was no room for discretion under the circumstances of this particular case because the Corps was bound to comply with the provisions of the law and secure either a permit or waiver from the local EQB to proceed with the discharge.

While we concede that local law establishes a permit or waiver requirement from the Puerto Rico EQB for depositing the aforementioned material along the Arecibo coastline we disagree with plaintiffs' argument that this condition totally abrogates the discretion envisioned in § 2680(a).

This is so because the permit or waiver requirement was but one of the many factors that the Corps had to take into its calculus in making its site selection. As

---

**3.** All parties agree that under the Federal Water Pollution Control Act ("FWPCA"), the discharged of dredged or fill material into waters of the United States is prohibited unless authorized by a permit issued by the Corps. 33 U.S.C. § 1344(a). One of the requirements imposed by the aforementioned statute for issuance of the permit is a certificate or waiver from the state in which the discharge will originate. 33 U.S.C. § 1341(a)(1). In the case of Puerto Rico, this document is issued by the EQB. *See,* Water Quality Standards Regulation No. 4282 of July 20, 1990. The purpose of this condition is to ensure that the proposed discharge will not violate the water quality standards established by the state for any given segment of navigable waters under its jurisdiction. Violation of the local provisions entail both criminal and administrative penalties. *See,* art. 7 of Regulation No. 4282.

previously noted, there were several public policy considerations which the Corps had to balance and which entailed extensive discretionary analysis.

Based on the foregoing, we conclude that the fact that one of the many elements to be taken into account by the Corps was submitting a request for a permit or waiver to the local government pursuant to law does not automatically eradicate the discretion exercised by the federal agency as to the totality of the circumstances in selecting the disposal site.

### Local Law

■ In response to defendant's arguments of lack of an actionable claim and causation, plaintiffs contend that in Puerto Rico a breach of law is actionable in tort.

■ The FTCA provides that the "United States shall be liable . . . relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. That is, liability of the United States for acts or omissions of its employees is contingent upon the provisions of the law where the incident occurred establishing a tort claim against a private individual for those same acts or omissions. *F.D.I.C. v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *Scanlon v. Dep't of the Army*, 277 F.3d 598 (1st Cir.2002); *Walsh v. United States*, 241 F.3d 96 (1st Cir.2001).

■ In Puerto Rico, violation of a regulatory or statutory duty may constitute negligence for purposes of an action sounding in tort under art. 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141 (1990). However, the Supreme Court has expressly stated that the mere breach will not suffice. Plaintiffs must also prove a causal nexus between the

violation and the damages complained of. *See, Negron Garcia v. Noriega Ortiz*, 117 D.P.R. 570, 1986 WL 376772 (1986) (violation of traffic laws); *Pacheco v. AFF*, 112 D.P.R. 296, 1982 WL 210650 (1982) (failure to comply with electric safety code).

Plaintiffs have failed to explain how the fact that the permit or waiver was not obtained from the EQB proximately caused their damages. That is, the necessary causal connection between the Corp's failure to comply with the legal requirement and the losses complained of in the complaint. Hence, we conclude there is no viable negligence suit under the applicable Puerto Rico doctrine.

### Conclusion

Based on the foregoing, the Motion for Summary Judgment filed by the United States (docket No. 42)[4] is **GRANTED**.

Accordingly, the complaint filed in this case is hereby **DISMISSED**. Judgment shall issue.

IT IS SO ORDERED.

---

4. *See,* Plaintiffs' Opposition (docket No. **43**).