# United States Court of Appeals
## For the First Circuit

_____

No. 05-1353

CLARA MONTIJO-REYES; JORGE PIMENTEL-MILANES;
ROHALDO VELAZQUEZ-GALARZA; ILUMINADA SERRANO-REYES;
ANA AVILES-SANTIAGO; EMMA RUIZ-LLANEZA;
XAVIER I. GONZALES; IRMA JIMENEZ; ESTEBAN MALTES,

Plaintiffs, Appellants,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond L. Acosta, U.S. Senior District Judge]

_____

Before

Selya and Lynch, Circuit Judges,
Restani[*], Judge.

_____

    Miguel Sarriera-Roman for appellants.
    Isabel Muñoz-Acosta, United States Attorney, with whom
Miguel A. Fernandez, Assistant United States Attorney, and H.S.
Garcia, Assistant United States Attorney, were on brief, for
appellee.

_____

January 24, 2006

_____

    [*]  The Honorable Jane A. Restani, Chief Judge of the United
States Court of International Trade, sitting by designation.

**RESTANI**, **Judge**.  Plaintiffs-Appellants, owners of properties located near La Marginal Beach in Puerto Rico, bring this action pursuant to the Federal Tort Claims Act ("FTCA") for damages to their homes resulting from the disposal of dredged material on La Marginal Beach under the direction of the U.S. Corps of Engineers ("Corps").  Plaintiffs appeal the district court's grant of summary judgment in favor of the United States holding that (1) the Corps' disposal activity is protected by the discretionary function exception to the FTCA, and (2) there is no causal connection between the violation of a specific requirement and the injuries caused by the discharge of dredged material.  We agree with the district court that there is no jurisdiction for it to entertain this suit under the FTCA, and we affirm its judgment.

## BACKGROUND[1]

By public notice dated January 20, 1999, the Corps proposed emergency maintenance dredging involving approximately 60,000 to 80,000 cubic yards of shoal material from the federally authorized navigation channel in Arecibo Harbor.  For disposal of the dredged material, the Corps proposed placement upland on Port

---

[1]This case shares much of its factual background with a case decided by the United States District Court for the District of Puerto Rico, Surf & Environment Conservation Coalition v. United States, 322 F. Supp. 2d 126 (D.P.R. 2004), in which the district court determined that the Corps violated numerous provisions of the Clean Water Act ("CWA") and Puerto Rico's Water Quality Standards Regulations ("WQSR") by discharging dredged material from Arecibo Harbor into open waters.

Authority property, with nearshore placement as the next alternative. By letter dated March 1, 1999, the Puerto Rico Environmental Quality Board ("EQB") required the Corps to submit additional dredging project documentation and to obtain a water quality certificate.

In response the Corps submitted an Environmental Assessment, which increased the estimated cubic yards of dredged to 150,000. The Assessment explained that upland disposal was discarded because it was a more costly alternative. Instead, the Corps concluded that

> the material to be removed is considered suitable for downdrift beach and shore nourishment. Erosion, partly related to sea level rise, has been an ongoing problem along the Arecibo coast for many years . . . Therefore, it is appropriate and beneficial to dispose of the dredge material back into the natural littoral drift of the region.

By letter dated July 27, 1999, the Corps requested a waiver of water quality certificate from the EQB for the nearshore disposal of dredged material from Arecibo Harbor. The EQB granted an exemption to the water quality certificate on August 6, 1999, for deposit of the dredged material "in the Arecibo river banks, in order to help combat the erosion problems that exist in the beaches along the Arecibo coast." An environmental survey of the nearshore disposal site revealed that the site consisted of hardbottom habitats of invertebrates, fish, and marine reptiles, so the Corps

-3-

revised its plan to beach only disposal.[2]

Nonetheless, on June 19, 2000, the Corps began disposal in the open waters of the United States, which had never been suggested as an alternative. Soon thereafter, disposal was halted because the United States Fish and Wildlife Service ("USFWS") discovered that the dredged material was being deposited on a coral hard-ground community.[3] The Corps proposed a new disposal method along the shoreline instead of the near-shore disposal site to minimize the impact to hardground habitats and potential marine life. By the July 2001 project completion date, almost all of the dredged material had been placed directly on La Marginal Beach, in front of Paseo Victor Rojas and across from Plaintiffs' properties.

---

[2]In Surf, the court found that by letter dated February 18, 2000, the Corps sought to "return[] to the plan originally described in the public notice of early 1999 which entailed disposal of dredge material via a pipeline to an existing beach and beach placement of material." Surf, 322 F. Supp. 2d at 134. While the court apparently concluded that La Marginal Beach was the new proposed beach disposal site, see id., the court did not find that the Corps sought an exemption based on that disposal site. In fact, the court described the Corps' August 6, 1999 EQB exemption for the nearshore disposal site as the "one and only resolution and notice from the EQB . . . related to the exemption request for water quality certification for the dredging of the Arecibo Harbor." Id. at 137.

[3]Richard Bonner, the Corps official in charge, declares that, in response to the discovery of the hardbottom habitat, "[w]ork was halted while the Corps consulted with the [USFWS] and National Marine Fisheries Service, and obtained an exemption to the Water Quality Certificate from the Environmental Quality Board for Puerto Rico, allowing disposal of sand on the beach itself." Despite this reference to an exemption pertaining to the dumping of sand on the beach, no documentary evidence of such an exemption appears in the record appendix.

As a result, the beach height increased approximately fifteen feet along the entire beach area and was leveled with Paseo Victor Rojas to an estimated width of 1000 feet. The street was protected from blowing sand by a stone concrete wall and silt fence.

On September 25, 2001, Plaintiffs filed a complaint pursuant to the provisions of the FTCA, alleging damages resulting from sand and dust carried from the Corps' disposal site. The complaint alleged that the Corps discharged dredged materials in violation of both the CWA and the WQSR because the Corps did not receive a water quality certificate or an exemption from the EQB for the specific disposal site as required by the WQSR.[4]

The government filed a motion for summary judgment on the grounds that Plaintiffs' FTCA claims are precluded by the discretionary function exception to the FTCA and are not based on viable tort claims under Puerto Rico law. While the court agreed with Plaintiffs that "local law establishes a permit or waiver requirement from the Puerto Rico EQB for depositing [dredged

---

[4]In their amended complaint, Plaintiffs describe the Corps' disposal project as involving, "the discharge of dredge materials in waters of the United States." Plaintiffs allege that the Corps "disposed 196,000 cubic yards of dredged material . . . in an area close to the shore." While such language could refer to either beach or open water disposal in describing the cause of their damages, Plaintiffs state that "[t]he project was finish[ed] on or about July 6, 2000 and the dredged material was left "exposed to the strong winds that regularly occur in the area." Moreover, Plaintiffs state that the damages have ceased because "the waves and wind have removed almost all the sand and fine sediment from the place where the material was disposed." Thus, the complaint seems to claim damages from beach placement alone.

-5-

material] along the Arecibo coastline," it did not agree "that this condition totally abrogates the discretion envisioned in § 2680(a)." Montijo-Reyes v. United States, No. 01-2282, slip. op. at 10 (D.P.R. Dec. 13, 2004). The court concluded that the discretionary function exception applied because "the permit or waiver requirement was but one of many factors that the Corps had to take into its calculus in making its site selection." Id. Moreover, the court concluded that Plaintiffs did not show "the necessary causal connection between the Corps' failure to comply with the [CWA] and the losses complained of in the complaint." Id. at 11.

## DISCUSSION

**I.      Clean Water Act and Puerto Rico Water Quality Requirements**

The CWA makes it unlawful to discharge pollutants into navigable waters outside of the CWA's permit requirements. See 33 U.S.C. § 1311(a) (2000). In order to receive a CWA permit, an applicant must provide a certification "from the State in which the discharge originates or will originate." Id. § 1341(a)(1); see 33 C.F.R. § 336.1(a)(1), (8) (the CWA requires the Corps to seek state water quality certification for discharges of dredged or fill material into waters of the United States).[5] Additional provisions

_____

[5]The Commonwealth of Puerto Rico is treated as a state for purposes of the CWA. See Caribbean Petroleum Corp. v. EPA, 28 F.3d 232, 233 (1st Cir. 1994).

of the CWA make it clear that "Congress waived the federal government's sovereign immunity with respect to state regulation of dredging and water pollution." Friends of the Earth v. United States Navy, 841 F.2d 927, 934 (9th Cir. 1988). Section 1344(t) provides:

> Nothing in this section shall preclude . . . the right of any State . . . agency to control the discharge of dredged or fill material in . . . the navigable waters within the jurisdiction of such State, including any activity of any Federal agency, and each such agency shall comply with such State or interstate requirements both substantive and procedural to control the discharge of dredged or fill material to the same extent that any person is subject to such requirements.

33 U.S.C. § 1344(t). Section 1323 provides:

> Each [federal agency] . . . shall . . . comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental agency . . . [This] shall apply (A) to any requirement whether substantive or procedural (including . . . any requirement respecting permits and any other requirement, whatsoever).

Id. § 1323(a).

The WQSR states that it was promulgated by the EQB in accordance with the Environmental Policy Act, in order "to preserve, maintain and enhance the quality of the waters of Puerto Rico in such manner that they be compatible with the social and economic needs of the Commonwealth of Puerto Rico." WQSR Decl. of Goals & Purposes. To meet this goal, the WQSR requires a water

-7-

quality certificate prior to the discharge of pollutants into Puerto Rico's waters, WQSR Art. 6.1.2, 6.11, unless the EQB grants an exemption under WQSR Art. 6.1.3.

In the instant case, we do not determine whether the Corps violated the CWA and WQSR by discharging dredged material from Arecibo Harbor on La Marginal Beach. We do not need to decide any issue of the scope of the CWA waiver of sovereign immunity, or whether that waiver extends to actions under the FTCA. Neither do we need to decide whether state law may provide a mandatory duty such as to defeat the discretionary function exception. Instead, we decide the case on the independent ground that there is an insufficient causal link between the alleged failure to comply with the Puerto Rico water quality regulations and the alleged harm.

## II.     Federal Tort Claims Act

The FTCA provides a limited waiver of the United States government's sovereign immunity "for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (2000). This waiver of sovereign immunity itself has exceptions, which "define the limits of federal subject matter jurisdiction in this area." Hydrogen Tech. Corp. v. United States, 831 F.2d 1155, 1161 (1st Cir. 1987). We review de

novo a district court's dismissal for lack of subject matter jurisdiction under the FTCA's discretionary function exception. See Shansky v. United States, 164 F.3d 688, 690 (1st Cir. 1999).

The discretionary function exception immunizes the federal government from FTCA claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The basis for the discretionary function exception was Congress' desire to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984).

In considering the application of the exception, first, the court must identify the conduct at issue. Next, the court asks two interrelated questions: "(1) Is the conduct itself discretionary? (2) If so, does the exercise of discretion involve (or is it susceptible to) policy-related judgments?" Muniz-Rivera v. United States, 326 F.3d 8, 15 (1st Cir. 2003); see Attallah v. United States, 955 F.2d 776, 783 (1st Cir. 1992) ("even when the challenged action is the product of an employee's permissible use of judgment, a suit is barred only if that judgment is of the kind

-9-

that the discretionary function exception was designed to shield").

If the conduct is both discretionary and policy-related, the discretionary function exception bars subject matter jurisdiction.

Plaintiffs bring this FTCA action alleging that the Corps negligently discharged dredged material on La Marginal Beach, which proximately caused damages to their homes.[6]  Plaintiffs do not dispute that the Corps' selection and maintenance of the disposal site at La Marginal Beach are susceptible to policy related judgments.[7]  Rather, in order to overcome the application of the FTCA's discretionary function exception, Plaintiffs argue that the discharge of dredged material on La Marginal Beach was nondiscretionary because the CWA mandated a course of conduct for the Corps to follow before disposing of dredged material.

---

[6]Plaintiffs contend that the government conduct giving rise to the claim in question is "the discharge of dredged material in navigable waters" without necessary water quality permits.  This broad assertion of conduct may cause some confusion because it potentially covers two distinct actions: (1) open waters disposal, and (2) direct disposal on La Marginal Beach.  Clearly, each discharge was a distinct occurrence, with distinct consequences and regulatory requirements.  As indicated above, see supra n.4., the damages alleged in the complaint appear to derive from the direct beach placement alone.

[7]"[T]he law presumes that the exercise of official discretion implicates policy judgments," so Plaintiffs "bear[] the burden . . . of demonstrating that the [Corps'] conduct was not at least susceptible to policy related judgments." Wood v. United States, 290 F.3d 29, 37 (1st Cir. 2002).  Here, Plaintiffs do not attempt to make this showing.  To the contrary, the record shows that the Arecibo Harbor dredging project involved the Corps' consideration of four distinct disposal choices, each of which required decisions involving political, economic, and public policy considerations.

> [T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive. And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary exception to protect.

Berkovitz v. United States, 486 U.S. 531, 536 (1988).

Specifically, Plaintiffs argue that the Corps violated the CWA's prescription to comply with all state water quality requirements. Plaintiffs assert that under Puerto Rico law, the Corps was required to obtain a water quality certificate or waiver from the EQB prior to disposing dredged material into Puerto Rico's waters. In this case, on August 6, 1999, the EQB granted the Corps' exemption request for disposal of dredged material in the Arecibo river banks. Thereafter, the Corps disposed of dredged material at two sites not approved in the exemption request. Plaintiffs contend that when the Corps discharged dredged material outside the scope of its EQB waiver, it violated a nondiscretionary duty imposed by the CWA to comply with all Puerto Rico water quality requirements.[8]

---

[8]This argument involves an issue of first impression in this circuit as to whether a state regulation can prescribe the conduct of a federal agency to defeat the discretionary function exception. While this line of argument has some precedent, see, e.g., Lopez v. United States, 376 F.3d 1055, 1058 (10th Cir. 2004)(stating that a United States Postal Service regulation requiring mailboxes to be "placed to conform to state laws" is a nondiscretionary mandate for the United States Postal Service to relocate mailboxes that are
(continued...)

-11-

While the CWA, in combination with the WQSR, specifically requires that the Corps obtain a certificate or waiver prior to discharging dredged material in navigable waters, Plaintiffs do not allege that the Corps' failure to obtain a certificate or waiver caused the damages to their homes. Reviewing the complaint, Plaintiffs allege that with knowledge of the constant wind at La Marginal Beach, the Corps discharged fine sand without adequate protection. Thus, the harm to Plaintiffs' homes was allegedly caused by either negligent disposal site selection or negligent maintenance of the disposal site. We hold that Plaintiffs' failure to obtain a water quality certificate or exemption did not proximately cause this harm.

First, Plaintiffs do not allege that the EQB would have rejected an exemption request by the Corps for disposal on La Marginal Beach. Therefore, the Corps' failure to follow the CWA's mandate to comply with state law does not even pass the but for causation test. Second, neither the CWA nor the WQSR provide any prescription aimed at preventing private property damage arising from negligent site selection or site maintenance. See Shansky, 164 F.3d at 691 (holding that Park Service Operating Manual was too general because it did not "specifically prescribe that any particular safety measure be employed at any particular place or in

[8](...continued)
placed in violation of state law), we do not reach this issue here.

-12-

any particular facility").

As to the site selection, the Corps made a discretionary decision to select La Marginal Beach. If the Corps had requested an EQB exemption, the WQSR would not have required the EQB to reject that site selection. As to the Corps' maintenance of the beach disposal site, the Corps made discretionary decisions to build the beach to a specific height and to protect nearby private property by installing a concrete wall and a silt fence. The WQSR does not prescribe any specific measures for maintaining a beach disposal site, or authorize the EQB to reject an exemption application based on inadequate site maintenance. Thus, whether or not the Corps obtained a water quality certificate or exemption, the negligent conduct that allegedly caused Plaintiffs' damages was not forbidden.

The legislative intent behind the CWA and WQSR supports this limited interpretation. The stated purpose of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Section 401 shows that "Congress intended to give the states veto power over the grant of federal permit authority for activities potentially affecting a state's water quality." United States v. Marathon Dev. Corp., 867 F.2d 96, 99-100 (1st Cir. 1989). The WQSR's stated purpose is "to preserve, maintain and enhance the

quality of the waters of Puerto Rico."[9]  WQSR Decl. of Goals &
Purposes.   There is nothing in the CWA or WQSR that indicates a
legislative intent to protect private homes from the indirect
effects of dredged material disposal.   Accordingly, we hold that
the CWA and WQSR do not overcome the discretionary function
exemption where, as here, Plaintiffs fail to allege a causal
connection between the Corps' failure to comply with the CWA and
WQSR and the purported damages for which they seek recovery under
the FTCA.

## CONCLUSION

For the foregoing reasons, we conclude that the
discretionary function exception of the FTCA applies to bar subject
matter jurisdiction to consider the Plaintiffs' action for damages
caused by the Corps' disposal of dredged material at La Marginal
Beach.   To the extent that Plaintiffs assert that the CWA
specifically prescribes the Corps' course of conduct, Plaintiffs do
not allege a causal connection between the violation and their
asserted damages.   We AFFIRM.

---

[9]Further, the WQSR's enumerated purposes are to: "(1) designate
the uses for which the quality of the waters of Puerto Rico shall
be maintained and protected, (2) prescribe the water quality
standards required to sustain the designated uses, (3) identify
other rules and regulations applicable to sources of pollution that
may affect the quality of waters subject to this Regulation and (4)
prescribe additional measures necessary for implementing, achieving
and maintaining the prescribed water quality."   Marathon Dev.
Corp., 867 F.2d at 99-100.