# United States Court of Appeals
## For the First Circuit

No. 10-1152

COURTNEY R. CARROLL, et al.,

Plaintiffs, Appellants,

v.

UNITED STATES, et al.,

Defendants, Appellees.

BOARD OF DIRECTORS OF THE RAINFOREST KIDS CHILD
DEVELOPMENT CENTER, et al.

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Lipez, Siler,[*] and Howard,
Circuit Judges.

Salvador J. Antonetti-Stutts, with whom Courtney R. Carroll
and O'Neill & Borges were on brief, for appellants.
Ginette L. Milanes, with whom Rosa Emilia Rodriguez-Velez,
United States Attorney, Nelson Pérez-Sosa, Assistant United States
Attorney, Chief, Appellate Division, and Luke Cass, Assistant
United States Attorney, were on brief, for appellees.

October 31, 2011

[*]Of the Sixth Circuit, sitting by designation.

**LIPEZ, <u>Circuit Judge</u>**.  This tort action was brought by the parents of a young child who was seriously injured when she was struck in the head by an object thrown from a lawnmower as she rode a tricycle at her childcare center.  Separate entities were providing the lawn maintenance and the childcare on the day of the accident under contracts with the federal government.  Appellants brought a suit for damages against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, and alleged supplemental claims under Puerto Rico law against other defendants, including the childcare provider and the maintenance company.  The district court concluded that the FTCA's independent contractor defense barred liability under the statute, and it thus dismissed the action for lack of subject matter jurisdiction.  We agree that the case must be dismissed, although we conclude that the FTCA's discretionary function exception provides the rationale.

## I.

On the morning of October 17, 2006, three-year-old V.C.[1] was riding a tricycle in the parking lot of the Rainforest Kids Child Development Center ("Rainforest Kids") in San Juan at the same time that an employee of Genett Group, Inc. ("Genett") was mowing the grass adjacent to the lot.  A projectile dislodged by the lawnmower struck V.C. in the forehead, above her right eye.

---

[1] Consistently with the federal rules, we refer to the child by her initials.  <u>See</u> Fed. R. Civ. P. 5.2(a); Fed. R. App. P. 25(a)(5).

V.C.'s mother, appellant Courtney Carroll, was summoned to the scene and accompanied her daughter in an ambulance to a nearby hospital, where the girl had emergency surgery. V.C. was discharged from the hospital two days later. She will require ongoing observation to determine whether the injury caused permanent impairment.

Rainforest Kids operates the childcare facility on land adjacent to the Federico Degetau Federal Building under a license from the General Services Administration ("GSA"). Genett has a contract with GSA to provide maintenance and landscaping services for the Federico Degetau property, including at Rainforest Kids. Carroll and her husband, Ricardo Acosta Rodriguez, brought suit alleging, inter alia, that the United States was liable for V.C.'s injuries under the FTCA because it failed to coordinate the activities of the two contractors to ensure the safety of children enrolled at Rainforest Kids.[2] They claimed that their family had suffered $9.5 million in physical, emotional, and economic damages as a result of V.C.'s injury.

The United States disputed its liability for the accident based on two limitations on the jurisdiction granted by the FTCA

---

[2] The other defendants were the corporation doing business as Rainforest Kids (Corporacion para la Asesoria y Desarrollo de Proyectos Educativos (CADEPE)), Rainforest Kids' Board of Directors, the childcare center's director (Aida L. Herrans Barreras) and insurance company (Universal Insurance Company), and Genett and its insurer (ACE Insurance Company). This appeal addresses only the liability of the United States.

for tort claims against the government: the independent contractor defense and the discretionary function exception. Under the former, the government may not be held responsible for negligent acts or omissions committed by employees of government contractors whose daily operations are not closely supervised by United States officials – in essence, eliminating vicarious liability as a theory of recovery against the federal government. See United States v. Orleans, 425 U.S. 807, 815 (1976); Wood v. United States, 290 F.3d 29, 36 n.4 (1st Cir. 2002).[3] Under the latter, discretionary acts of government employees are immunized from liability when based on policy considerations. See 28 U.S.C. § 2680(a); Abreu v. United States, 468 F.3d 20, 25-26 (1st Cir. 2006). The district court found that the independent contractor defense required dismissal of the case and, consequently, did not consider the applicability of the discretionary function exception. Having rejected federal jurisdiction under the FTCA, the court also dismissed the supplemental causes of action under Puerto Rico law.

This timely appeal followed.

## II.

The FTCA provides a "carefully limited waiver" of the federal government's sovereign immunity for certain claims alleging

---

[3] The FTCA waives the government's sovereign immunity for actions by employees of "any federal agency" or "persons acting on behalf of a federal agency in an official capacity," but states that the term "Federal agency" "does not include any contractor with the United States." 28 U.S.C. §§ 1346(b)(1), 2674, 2671.

harm caused by United States employees or agents. <u>Bolduc</u> v. <u>United States</u>, 402 F.3d 50, 62 (1st Cir. 2005). It allows civil actions against the government "for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The FTCA expressly does <u>not</u> waive the government's immunity for claims arising from the acts or omissions of independent contractors. <u>See</u> <u>supra</u> n.3 (quoting, <u>inter</u> <u>alia</u>, 28 U.S.C. § 2671). The waiver also has exceptions and, where they apply, "the federal courts lack subject matter jurisdiction over torts against the United States." <u>Wood</u>, 290 F.3d at 35; <u>see also</u> <u>Montijo-Reyes</u> v. <u>United States</u>, 436 F.3d 19, 24 (1st Cir. 2006).

Plaintiffs argue on appeal that the district court erred in dismissing the case based on the FTCA's independent contractor defense because they do not seek to impose liability on the United States for the actions of Rainforest Kids' or Genett's employees. Rather, their target is the government's own failure to coordinate the contractors' activities to ensure the safety of Rainforest Kids' young charges. Nor does the discretionary function exception apply, they assert, because V.C.'s injury did not arise from policy-related discretionary conduct entitled to protection from

tort liability. Plaintiffs argue that the government had no discretion to fail to implement and enforce schedules for lawn mowing and outdoor play that would have protected Rainforest Kids' children from the risk of flying objects. Appellants also contend that the district court erred in relying on the contract documents submitted by the United States as proof of the terms of the government's agreement with Genett because they were "unsigned, incomplete, [and] unauthenticated."[4]

As we shall explain, the independent contractor defense and the discretionary function exception are linked in the factual circumstances of this case. Although we agree with the district court that Rainforest Kids and Genett are independent contractors, the discretionary function exception provides the ground for dismissal because appellants argue that the United States is directly, rather than vicariously, liable for the injury to V.C. See Wood, 290 F.3d at 36 n.4 (limiting discussion to the

---

[4] Appellants do not question the adequacy of the documentation of the agreement between the United States and Rainforest Kids. The record contains a signed "Revocable License for Non-Federal Use of Real Property," with an attachment that specifies various conditions of the relationship, including the childcare center's responsibility not to "discriminate on the basis of race, religion, color, national origin or disability with respect to enrollment of children or employment of staff," to "maintain the facility in a clean and safe manner," and to report suspected child abuse. Docket 50-2, at 4, §§ (c), (f), (h).

discretionary function exception where the plaintiff "fashion[ed] her argument as one of direct rather than vicarious negligence").[5]

In evaluating a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, we construe plaintiffs' complaint liberally and ordinarily "may consider whatever evidence has been submitted, such as . . . depositions and exhibits." Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996); see also Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010). Our inquiry, however, is tilted toward the government's claim of immunity: "[T]he FTCA must be 'construed strictly in favor of the federal government, and must not be enlarged beyond such boundaries as its language plainly requires.'" Bolduc, 402 F.3d at 56 (quoting United States v. Horn, 29 F.3d 754, 762 (1st Cir. 1994)).

We begin with plaintiffs' assertion that we should not take into account the Genett contract documents on which the district court relied.[6]

---

[5] As our review would in any event be de novo, we see no need to prolong these proceedings by remanding to the district court to consider the discretionary function exception in the first instance. See Limone v. United States, 579 F.3d 79, 101 (1st Cir. 2009) ("We afford de novo review to a district court's determination that the discretionary function exception does or does not apply."); see also Del Toro Pacheco v. Pereira, 633 F.3d 57, 62 (1st Cir. 2011) ("We need not adopt the district court's reasoning, but may affirm on any ground made apparent in the record.").

[6] Appellants also assert in their reply brief that the district court erred by relying on evidence related to the merits and by making credibility determinations without providing them an opportunity to complete the record with "all pertinent evidence."

## A.  The Contract Exhibits

The agreement between the United States and Genett is critical evidence in evaluating the government's relationship with the contractor and, as will be seen, the nature of that relationship is an essential component of our analysis of the discretionary function exception.  See Williams v. United States, 50 F.3d 299, 307 (4th Cir. 1995) (examining the contract between the government and contractor in evaluating contractor's status); Brooks v. A.R. & S. Enters., 622 F.2d 8, 11 (1st Cir. 1980) ("Contracts typically define the parameters of the contracting parties' responsibilities.").  The status of the documents evidencing the contract is thus important to our inquiry.

Without question, the contract materials in the record are less than ideal.  The primary item is a comprehensive document that describes the maintenance and landscaping tasks at the Federico Degetau complex for which GSA sought to hire a

We reject these contentions, which arguably were belated and in any event were undeveloped.  To the extent these claims of error were preserved, it suffices to say that the district court addressed only the jurisdictional question, and it considered only the materials submitted to it.  The plaintiffs do not say that they requested and were denied an opportunity for further discovery before the court ruled on the motion to dismiss and, absent such a request, they have no cause to criticize the court's process. Indeed, appellants note that they had additional deposition testimony that they did not submit to the district court, apparently because they believed it related only to the merits.

contractor.[7] This document, which spans more than sixty pages, is what the district court treated as the contract, although the document itself merely presents the government's expectations and does not refer to Genett by name. Nor is it signed by either party.[8] Included in the same packet of materials, however, are multiple forms labeled "Amendment of Solicitation/Modification of Contract," several of which indicate that amendments were made to an agreement between the government and Genett. One such form

---

[7] The document, Number 50-4 in the district court docket, begins with a standard government form titled "Solicitation, Offer and Award" that apparently serves as a cover page. It is followed by five pages listing specific supplies and services sought by the government, with adjacent columns in which prospective contractors presumably are expected to provide price quotations. The next approximately fifty pages describe in detail various aspects of the contract solicitation, including the scope of the work, the responsibility for supervision, what supplies and materials will be supplied by the government and the contractor, quality and safety standards, pest management, and specific cleaning requirements for the childcare center, health unit and physical fitness center.

[8] Unfortunately, neither side in this case has been a model litigant in providing timely and easily accessible supporting materials. The government did not attach the Genett contract to its motion to dismiss in the district court, although it later submitted the documents described above. The government also submitted an unsworn declaration from Rubin Padilla, a supervisory GSA contract specialist, who stated that Genett was hired to do maintenance work, including at Rainforest Kids. Docket 67-11. He explained that government contracts are formalized when the contractor signs the Offer (Form 33) and the government signs the agreement (Form 26). Although his declaration states that those two signed forms were attached, they were not.

Appellants did not help matters on appeal. They successfully moved to waive the filing of an appendix, leaving us to cull through the district court record ourselves for relevant materials.

bears the signatures of both Genett's president and GSA's contract specialist.  See Docket 50-11.[9]

Although acknowledging that it may have been "technically permissible" under Rule 12(b)(1) for the court to consider the submitted materials, appellants maintain that the court erred in accepting them as accurate depictions of the government's relationship with Genett.  They argue that the government's failure to produce "complete and authenticated copies" of the contracts should have led the district court to reject any defense based on the contract provisions.  Like the district court, however, we are satisfied that the documents adequately memorialize the agreement between the United States and Genett.  The "contract" contains a detailed description of the contractor's role and responsibilities, see infra Section II.C.2.b, and the government has represented in filings to the court that the document reflects the parties' agreement.  See Fed. R. Civ. P. 11(b)(3) (stating that, by submitting a pleading or "other paper" to the court, an attorney certifies to the best of her knowledge and belief, "formed after an inquiry reasonable under the circumstances," that "the factual

---

[9] The amendment, which was signed by both parties on September 19, 2005, added the requirement to clean the cafeteria dining area at the Federico Degetau building and increased the monthly contract amount by about $2,000.  Although the identifying numbers on the Solicitation form and the amendment are not identical, they substantially overlap.  The Solicitation, dated June 22, 2004, was numbered "GS-02P-04-PFC-0028."  The signed Amendment modified a contract that was numbered "GS-02P-05-PFD-0028" and dated February 24, 2005.

contentions have evidentiary support").  Appellants do not dispute that the document depicts Genett's obligations, but suggest that it may not be complete.  Given the substantial document in the record, the theoretical existence of additional provisions materially modifying its terms is too speculative a possibility to give us pause.  We thus accept as not clearly erroneous the district court's implicit finding that the challenged documents provide sufficiently reliable evidence of the parties' agreement for purposes of the jurisdictional ruling.

**B. The Independent Contractor Defense**

1. The Status of Rainforest Kids and Genett

The key factor governing whether an entity providing services to the United States is an independent contractor is whether the contractor, rather than the government, exercises day-to-day supervision and control of its own activities.  See United States v. Orleans, 425 U.S. 807, 814 (1976) ("A critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" (quoting Logue v. United States, 412 U.S. 521, 528 (1973))); id. at 815 (holding that independent contractor status under the FTCA turns on "whether [the contractor's] day-to-day operations are supervised by the Federal Government"); see also Williams, 50 F.3d at 307 (finding independent contractor status based on "a comprehensive instrument providing that [the

-11-

contractor] was responsible for the maintenance of the Premises" and "the daily operations of the Premises"); Larsen v. Empresas El Yunque, Inc., 812 F.2d 14, 16, 14 (1st Cir. 1986) (holding that the independent contractor defense applied where responsible party ran the "day-to-day operation of [a] restaurant" that was located on premises "owned and controlled by the United States").

Appellants appear to acknowledge that Genett and Rainforest Kids were independent contractors and, indeed, there can be no serious dispute as to that status. Attachment I of the childcare center's licensing agreement specified that "[t]he Provider," i.e., Rainforest Kids' board of directors, "is not an employee or agent of the Government," and that, with certain exceptions, "decisions and responsibilities with respect to program, levels of enrollment, fees, tuition, hiring, policy making, and any and all other aspects of the operation and conduct of the Center's business shall be the exclusive right, prerogative, and responsibility of the Provider." Docket 50-2, at 6, § 5 (emphasis added).

Similarly, the Genett contract stated that it was governed by "performance-based specifications," and the document explained that, under a performance-based contract, "the contractor, rather than the Government, determines its own optimal work schedules, frequencies, resource allocations, and performance methods for meeting the Government's quality requirements." Docket

-12-

50-4, at 12, § 3.B. (emphasis omitted). The Genett contract also stated that "[i]t is the policy of GSA that Government direction or supervision of the contractor's employees, either directly or indirectly, will not be exercised." Docket 50-4, at 13, § C.4; see also id. at 53, § B.1 (stating that "[n]either GSA employees nor other Government employees are authorized to exercise either direct or indirect supervision over the contractor's employees").

Thus, under the terms of the agreements, the two service providers were independent contractors with control of – and responsibility for – the day-to-day management and supervision of their respective operations. The government argues that such responsibility logically extends to the scheduling of lawn mowing and outdoor playtime so as to avoid obvious hazards to the Rainforest Kids children. Appellants, however, argue that notwithstanding Rainforest Kids' and Genett's independent status, the United States could not properly delegate such coordination to the contractors. They argue, in effect, that the United States lacked the discretion to leave the responsibility for ensuring safety in the hands of the contractors. In addition, they appear to argue that the government did not, in fact, delegate such authority to the contractors.

On the one hand, appellants' arguments appear inconsistent with the basic premise of the independent contractor defense, i.e., that the government may not be held liable for

-13-

injury caused by the acts or omissions of independent contractors' employees in the day-to-day discharge of the duties the contractors were hired to perform. On the other hand, we think it possible for the government to hire independent contractors while retaining responsibility for a discrete aspect of their operations, including, for example, safety measures. See, e.g., Whisnant v. United States, 400 F.3d 1177, 1179 (9th Cir. 2005) (holding that the government had retained responsibility for safety even though an independent contractor was responsible for maintenance at a naval commissary). The government argues that it made no such safety carve-out in this case, and that the discretionary function exception protected its judgment to delegate the responsibility to Genett and Rainforest Kids. Before considering the nature of that exception and its application here, we look at whether responsibility for safety was included in the delegation of authority to the contractors.

2. Responsibility for Safety Measures

Both agreements expressly assign responsibility for safety to the contractors. The Rainforest Kids license obliges the childcare center to "comply with all Federal, State or local safety policies," Docket 50-2, at 5, § 4(i), and, in apparent recognition of the burden of liability, the license requires Rainforest Kids to procure liability insurance and to maintain accident insurance on "all students," id. § 7. Genett's agreement similarly states that

"the contractor shall comply with all applicable Federal, State, local, and industry safety and health standards and regulations," Docket 50-4, at 25, § 14,[10] and it requires the contractor to employ "a sufficient number of capable and qualified contract and subcontract employees to enable it to properly, adequately, <u>safely</u>, and economically manage, operate, maintain, and account for the facility," <u>id.</u> at 48, § 2.B(1) (emphasis added). The contract also states that "[t]he Contractor shall take all necessary precautions to prevent injury to the public, building occupants, or damage to property of others." <u>Id.</u> at 56, Part II, § 2.

Two other provisions in the Genett contract require particular attention to the safety of children. A provision addressing cleaning requirements states: "Due to the inquisitive nature of children, report to the COR any observations that could conceivably cause injury to a child. Extra effort should be made to ensure that maintenance equipment and supplies are well secured from the children." <u>Id.</u> at 49. A "Special Note" states:

> In addition to the standard scope of work described above, the expected outcome is to ensure a safe and healthy environment for the children utilizing the child centers. This includes the daily removal and disposal of soiled diapers, plus a special emphasis on quality control. All efforts should be made to protect the children. Due to the

---

[10] Another provision, in the "Safety and Health" section of the contract, states that "[w]here there is a conflict between applicable regulations, the most stringent shall apply." Docket 50-4, at 56, Part I, § 3.B.

inquisitive nature of children, report to the CO [GSA "contracting officer"] and/or his/her designated representative, any potential hazards that could conceivably cause injury to a child. Extra effort should be made to ensure that maintenance equipment and supplies are well secured from the children. Employees cleaning Child Care Centers are subject to Federal, State, and Local laws governing health screening requirements prior to commencing employment.

Id. at 51.

Specifically with respect to lawn-mowing, the deposition testimony confirms that it was Genett's responsibility to set a schedule that would meet the contract's quality and safety requirements. Anabel Mulero, the GSA contracting officer's representative ("COR") at the time of the accident, testified that it was not part of her job to ensure that Genett followed a schedule for mowing "because [the contract] is performance based," though she reported that she encouraged adherence to a schedule so the contractor could avoid falling behind in the work. Docket 67-5, at 3. Another COR, Maxwell Rivera, stated that the only guidance given by GSA about mowing when people were in the area was to work safely: "[T]he contract says they have to be working to emphasize safety. So if there are kids, common sense, to me, would tell me I would not cut the grass if I have kids present." Docket 67-2, at 12. Rivera further testified that Genett and Rainforest Kids would need to work out scheduling to avoid conflicts "because

-16-

we don't give them the schedule as to when to cut the grass. We just want it cut and cleaned." Docket 67-5, at 20.

Wanda Lara, Genett's project manager, reported the same allocation of responsibility. She testified that the contractor's employees were required to walk the grassy area of the complex looking for rocks and other debris. Docket 67-5, at 10. Although she did not specify who formulated that policy, she stated that a mowing schedule had been prepared by the Genett project manager who preceded her. Id. at 11.

Mulero also testified that a lawn-mowing schedule was developed by Genett and Rainforest Kids after complaints were made by the childcare workers about Genett employees interfering with their activities and making noise during the children's nap times. Docket 60-4, at 5. Mulero did not participate in the meeting to work out the arrangements, she explained, because "I didn't feel like I had to be there. I think that was something [on which] two civilized persons could reach an agreement."[11] Id. at 6.

_____

[11] Repeatedly in their filings appellants disingenuously report that Mulero stated that she did not participate in this meeting "[b]ecause I didn't feel like it." Although the words are accurately reported, the transcript makes clear that "I didn't feel like it" was a partial thought that was completed – after a dash in the transcript – with the statements quoted above.

Mulero's testimony about the scheduling meeting between Genett and Rainforest Kids gives context to testimony by GSA contract specialist Belkys Torres, highlighted by appellants, that "[t]he contractors are not allowed to discuss things in detail with the tenant. They must come through the CO [contracting officer]." Docket 60-2, at 7. Torres went on to explain that reliance on the CO was intended "to avoid misinterpretation of the terms." Nothing

-17-

In sum, both the terms of the agreements and their actual execution show that the United States did not carve out responsibility for safety measures from its otherwise comprehensive delegation of day-to-day authority to Rainforest Kids and Genett. Although the Genett contract anticipates government-specified schedules or procedures for some matters, possibly including "safety items,"[12] such detail does not negate the agreement's overall status as a performance-based contract. The varying levels of specificity signify only that the government determined that certain tasks needed more explicitly stated performance expectations. See, e.g., Orleans, 425 U.S. at 817-18 (noting that

---

in the contracts, however, foreclosed direct communication between Genett and Rainforest Kids about "common sense" (in Rivera's words) safety precautions such as a schedule for mowing that was compatible with the childcare center's activities.

[12] The contract states that, "[i]n certain cases (e.g., safety items), the Government may specify work schedules, frequencies, or methods." Docket 50-4, at 12, § 3.B. For example, one provision states that "[a]ll cleaning of occupied space shall be performed during normal working hours," which are identified as weekdays from 6:30 a.m. to 5:30 p.m. Id. at 26, § B.2.A. Elsewhere, under "Cleaning Work Quality Requirements," the contract specifies the following standards:

> Lawn areas shall be neatly mowed up to three inches height with no grass overlapping sideways [sic] or driveways. Lawn shall be free of weeds. Planters should be watered as needed, maintained in good growing conditions, and weeds removed. Parking areas shall be free of dirt and debris accumulation. All fence surrounding the building perimeter and inside fences shall be free of growing weeds. No dirt shall be left where sweepings were picked up.

Id. at 32, § C.23.

the independent contractor in that case "must comply with extensive regulations" and guidelines, although the contracting agency does not have the "power to supervise the daily operation" of the contractor); Logue, 412 U.S. at 529-30 (finding independent contractor status where the contractor must follow detailed federal rules and standards, but "the agreement gives the United States no authority to physically supervise the conduct of the [contractor]'s employees").[13]

We thus turn to consider whether the government's decision to assign to others the responsibility for ensuring safety at the Federico Degetau complex was a discretionary judgment protected from FTCA liability.

## C. The Discretionary Function Exception

The Supreme Court has observed that the discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its

---

[13] Contrary to appellants' contentions, none of the deposition testimony is inconsistent with the conclusion that Genett and Rainforest Kids bore responsibility for safe scheduling. Plaintiffs cite a statement of GSA contract specialist Torres that GSA was required to obtain, approve, and enforce maintenance schedules prepared by Genett, but Torres's explanation for that oversight – "to ensure that the tenants . . . are available for these maintenance employees to come around and do the cleaning and all that" – reflects only a concern about access for indoor work and not an intent to control the contractors' schedules. Docket 60-2, at 5-6. Indeed, Torres also testified that the agreement with Genett was "a performance-based contract," and that "[w]e don't tell the contractor how to do the work." She explained that GSA provides "the standards of what we want" and "they decide when, how, and how many people they're going to use." Id. at 5.

desire to protect certain governmental activities from exposure to suit by private individuals."  United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984), quoted in Abreu, 468 F.3d at 25.  The exception, codified at 28 U.S.C. § 2680(a), immunizes conduct of government employees that arises from "legislative and administrative decisions grounded in social, economic, and political policy," protecting against "liability that would seriously handicap efficient government operations."  Wood, 290 F.3d at 36 (quoting Varig Airlines, 467 U.S. at 814, and United States v. Muniz, 374 U.S. 150, 163 (1963)) (internal quotation marks omitted).  The protection is available even when an employee has abused his or her discretion.[14]

A well-established framework is used to determine the applicability of the discretionary function exception:

> [A] court first must identify the conduct that is alleged to have caused the harm, then determine whether that conduct can fairly be described as discretionary, and if so, decide whether the exercise or non-exercise of the

---

[14] Section 2680 lists several exceptions to the coverage of the FTCA, including claims arising from the loss of mail, the assessment or collection of a tax, the imposition of a quarantine by the United States, or the execution of a statute (if done with due care).  The provision addressing discretionary acts excludes

> [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

> granted discretion is actually or potentially
> influenced by policy considerations.

Fothergill v. United States, 566 F.3d 248, 252 (1st Cir. 2009); see also United States v. Gaubert, 499 U.S. 315, 322-25 (1991); Berkovitz v. United States, 486 U.S. 531, 539 (1988).  If the challenged conduct is both discretionary and policy-based, there is no subject-matter jurisdiction for the claim.  Montijo-Reyes, 436 F.3d at 24.[15]  We consider each prong of the inquiry in turn.

1.  The Allegedly Harmful Conduct

Appellants focus on the manner in which the United States managed the contractors it hired to run the childcare center and to perform maintenance work at the Federico Degetau complex.[16]  They

---

[15] Our precedent places the burden on the plaintiff to show that discretionary conduct was not policy-driven and, hence, falls outside the exception.  Bolduc, 402 F.3d at 60, 62 (citing precedent "explaining that the law presumes that the exercise of discretion implicates policy"); see also Montijo-Reyes, 436 F.3d 24 n.7 (same).  But see Hart v. United States, 630 F.3d 1085, 1089 n.3 (8th Cir. 2011) (noting circuit split on whether the plaintiff or the government bears the burden of proof on the discretionary function exception).

[16] Appellants wisely do not challenge either the government's decision to employ contractors for the maintenance and childcare tasks or the government's decisions to hire these particular contractors.  See Brief at 42 (stating that the "assertions of negligence are not related to the selection of the lawn mowing company nor the decision to choose to hire a private company to mow the lawn as opposed to having employees of GSA mow the lawn").  Both types of judgments fall well within the discretionary function exception.  See, e.g., Williams, 50 F.3d at 310 ("Contracting out the responsibility to maintain the Premises while balancing fiscal considerations entails exercising judgment based on policy." (citing cases "illuminat[ing] the fact that the United States' contracting with independent contractors to ensure maintenance of Premises is a discretionary function")); Layton v. United States,

-21-

complain that the government breached its duty of care to V.C. and her family by (a) permitting Genett personnel to use dangerous equipment in the vicinity of children, (b) permitting V.C. to play in an area that was unreasonably dangerous, and (c) failing to coordinate schedules to avoid the risk of harm. Simply stated, appellants claim that GSA employees were negligent in failing to create and enforce a schedule that would have prevented mowing at times when the Rainforest Kids children were playing outside.

## 2. The Nature of the Conduct

The second step of the inquiry is to determine whether the identified conduct "involves a matter that the political branches have left to the actor's choice." Fothergill, 566 F.3d at 253. If a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow . . . the employee has no rightful option but to adhere to the directive." Berkovitz, 486 U.S. at 536. In such circumstances, where "the employee's conduct cannot appropriately be the product of judgment or choice, . . . there is no discretion in the conduct for the discretionary function exception to protect." Id.; see also Montijo-Reyes, 436 F.3d at 25. Where, however, "the government actors in question have latitude to make decisions and choose among

984 F.2d 1496, 1502 (8th Cir. 1993) (citing McMichael v. United States, 751 F.2d 303, 307 (8th Cir. 1985), for the proposition that the "decision to award a contract to a particular contractor involves weighing various considerations and is therefore protected by the discretionary function exception").

alternative courses of action, the conduct is discretionary." Bolduc, 402 F.3d at 61.

Appellants argue that the GSA employees overseeing the Federico Degetau complex had no discretion to forego safety measures that would have prevented the unsafe, overlapping activities by Genett and the childcare center on federal property. Although they point to no federal law, regulation or policy requiring GSA to control the interaction between the contractors on safety issues,[17] they maintain that the government had an obligation under Commonwealth law applicable to landowners, as well as under the contract, to ensure the children's safety by establishing and enforcing a schedule barring lawn mowing during the children's outdoor playtime. Appellants further suggest that the government

---

[17] In the district court, appellants invoked the federal statute authorizing GSA to support the operation of childcare centers on government property, 40 U.S.C. § 590; GSA's Child Care Center Design Guide 2003; a national manual of standards for childcare programs ("Caring for Our Children: National Health and Safety Performance Standards"); and provisions in the GSA Board of Directors Child Care Resource Book, including a statement that "the GSA Regional Child Care Coordinators have the responsibility to '[i]nterface with GSA property managers to ensure the center and outdoor play area are maintained in a manner that provides for a safe and healthy environment.'" See Proposed Pretrial Order, Docket No. 74, at 13 (quoting Resource Book).

The statute itself does not tell GSA how to "provide guidance, assistance, and oversight to federal agencies for the development of child care centers," 40 U.S.C. § 590(a), leaving much to the agency's discretion. Although the Design Guide specifies various safety measures to be followed in federally supported childcare centers – including, for example, the use of safety helmets on hard surfaces – neither it nor the other cited sources bar GSA from accomplishing the stated objectives through contracts with private parties.

-23-

was required to take action because GSA officials knew that maintenance personnel had previously mowed the lawn near the childcare center while children were playing outside.  We consider in turn the significance of Commonwealth law, the contract, and the allegation of knowledge.

a.  Commonwealth Law

Appellants may not invoke Puerto Rico law as a basis for determining whether the government's failure to adopt and enforce lawn-mowing safety procedures was protected discretionary conduct. State law cannot override the FTCA's grant of immunity for discretionary conduct:

> [A]lthough the threshold inquiry into governmental liability as defined by the FTCA requires an examination of state law to define tortious conduct, the question of <u>whether</u> a state law tort can be applied against the United States is exclusively one of federal law. Claimants obtain their "right to sue [the federal government] from Congress [and they] necessarily must take it subject to such restrictions as have been imposed."

<u>Berkman</u> v. <u>United States</u>, 957 F.2d 108, 111-13 (4th Cir. 1992) (alterations in original) (quoting <u>Dalehite</u> v. <u>United States</u>, 346 U.S. 15, 31 (1953) (quoting <u>Fed. Hous. Admin.</u> v. <u>Burr</u>, 309 U.S. 242, 251 (1940))); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Sydnes</u> v. <u>United States</u>, 523 F.3d 1179, 1184 (10th Cir. 2008) ("Considering state tort law as a limit on the federal government's discretion at the jurisdictional stage impermissibly conflates the merits of plaintiffs' claims with the question whether the United States has conferred jurisdiction

-24-

on the courts to hear those claims in the first place."); <u>Abreu</u>, 468 F.3d at 23 ("Even where the government conduct would create state tort liability in a suit against a private party, the FTCA provides that sovereign immunity is not waived if the challenged governmental action involved the exercise of discretion.").[18]  <u>But see</u> <u>Dickerson, Inc.</u> v. <u>United States</u>, 875 F.2d 1577, 1583 (11th Cir. 1989) (holding that "the independent contractor exception in the FTCA would not insulate the Government from the contractor's negligence if the duty was non-delegable under Florida law").

Thus, whether the government may be held liable under the FTCA for the failure to implement and enforce safety measures turns on whether <u>federal</u> law left it to the discretion of the applicable GSA officials to adopt – or not – such measures.  <u>Cf.</u> <u>Logue</u>, 412 U.S. at 528 ("Congress . . . could have left the determination as to whose negligence the Government should be liable for under the Federal Tort Claims Act to the law of the State involved, as it did with other aspects of liability under the Act.  But it chose not to do this . . . .").  As noted, appellants have identified no pertinent federal law obliging GSA to assume the day-to-day responsibility for safety.

---

[18] We do not face here the issue, noted in <u>Montijo-Reyes</u>, 436 F.3d at 25 & n.8, of "whether a state regulation can prescribe the conduct of a federal agency to defeat the discretionary function exception" where federal law explicitly requires compliance with state law.

b. Contractual Requirements

We already have rejected appellants' argument that the government retained responsibility for safety in its agreements with Rainforest Kids and Genett. See supra Section II.B.2. We see no basis on which the government's chosen allocation of authority could be deemed improper. Where no federal law or policy limited the government's discretion to delegate the coordination of schedules, or other lawn-mowing safety precautions, to the independent contractors, the United States had the flexibility to craft the balance of authority in the contracts as it saw fit. See, e.g., Muniz-Rivera v. United States, 326 F.3d 8, 16 (1st Cir. 2003) (noting that, in a case involving flooding of federally supported housing, "no applicable statute, regulation, or policy" directed "the manner in which the supervision is to be carried out nor specif[ied] the taking of the actions that the plaintiffs claim would have prevented their plight"); Bolduc, 402 F.3d at 61 ("Where . . . the government actors in question have latitude to make decisions and choose among alternative courses of action, the conduct is discretionary.").

Indeed, the decision to assign independent contractors the responsibility for safety, in particular, has been found to be within the government's discretion. See, e.g., Wood, 290 F.3d at 40 (noting that delegation of safety issues to a contractor reflected a judgment that "in obtaining the 'best value' for the

American taxpayer, worker safety should be a primary concern of the contractor"); <u>Shuman</u> v. <u>United States</u>, 765 F.2d 283, 294-95 (1st Cir. 1985) (endorsing dismissal of FTCA claim based on discretionary decision to delegate safety responsibility to independent contractor); <u>cf.</u> <u>Shansky</u> v. <u>United States</u>, 164 F.3d 688, 693 (1st Cir. 1999) ("[T]here is no principled basis for superimposing a generalized 'safety exception' upon the discretionary function defense."); <u>McMichael</u>, 751 F.2d at 307 (finding that government inspectors' failure to enforce safety requirements not protected by discretionary function exception where inspectors were given "a number of precise inspections to perform which involved no judgment concerning agency policy").[19]

As a matter of course, GSA's permissible judgment to delegate to the contractors the day-to-day responsibility for safety in the performance of their activities meant that the government had the discretion not to prescribe lawn-mowing and outdoor play schedules. The contractors, not the United States,

---

[19] Nor does the government lose its immunity if it retains the right to review a contractor's work. <u>Berkman</u>, 957 F.2d at 113-14 (noting that the government's "right periodically to inspect [the contractor]'s performance and ensure that the services provided were in compliance with the terms of the contract" does not negate independent contractor status); <u>Brooks</u>, 622 F.2d at 12 ("The right to inspect does not nullify the general rule that the government is not liable for torts of independent contractors."); <u>cf.</u> <u>Variq Airlines</u>, 467 U.S. at 819-20 ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind."); <u>Wood</u>, 290 F.3d at 41 (quoting <u>Variq Airlines</u>).

bore responsibility for implementing procedures to ensure the safety of the Rainforest Kids children.[20]

### c. The United States' Knowledge

Appellants suggest that, even if the United States otherwise had the discretion to delegate the coordination of activities to the contractors, the government was obliged to act here because it had knowledge that the dangerous conduct at issue had occurred previously. Assuming for the sake of argument that government knowledge could be part of the discretionary function analysis, appellants' attempt to invoke that factor here is unavailing. The only evidence of government knowledge in the record is a limited, disputed request for admission. When the United States failed to respond to appellants' requests for admission within the thirty days specified by Federal Rule of Civil Procedure 36(a), appellants moved to deem admitted, inter alia, a statement that GSA, "through its employees, had knowledge that maintenance personnel had previously mowed the lawn surrounding the Rainforest Kids Child Development Center at the same time that children were playing outside the facility." In its opposition to

---

[20] We need not, and do not, address circumstances in which the government possesses special expertise on the proper safety measures. See Marlys Bear Medicine v. United States, 241 F.3d 1208, 1216-17 (9th Cir. 2001) (finding discretionary function exception inapplicable in the context of timbering operations on Indian lands because the government agency was "the only organization on the reservation with the appropriate safety expertise and it has virtually complete control" of the operations).

the deeming motion, the government attributed its delayed response to its "normal reliance on the relevant agency to coordinate and provide the information necessary to respond to discovery requests" and stated that it had by that time responded to the appellants' requests for admissions and production of documents.

The district court did not rule on appellants' motion to deem before dismissing the case. Even if the statement is deemed admitted, however, it is an insufficient basis on which to deny the government the protection of the discretionary function exception. The statement says only that the overlap had occurred before, at an unspecified time, and not that it had been occurring routinely. Whatever the significance generally of government knowledge of its independent contractors' safety performance, we reject the notion that a single problem would shift hands-on responsibility to the government. Under the contracts, Genett and Rainforest Kids had the obligation to make sure the overlap did not recur.

We are thus satisfied that the record shows that the allegedly harmful conduct – the failure to establish and enforce a schedule for safe mowing – "can fairly be described as discretionary," Fothergill, 566 F.3d at 252, satisfying the second prong of the discretionary function inquiry.

3. Policy-Related

The third prong of the discretionary function exception requires us to consider whether the judgment at issue "is of the

-29-

kind that the discretionary function exception was designed to shield," Berkovitz, 486 U.S. at 536, or, as we have framed the question: "whether 'the exercise of discretion involve[s] (or is [] susceptible to) policy-related judgments,'" Abreu, 468 F.3d at 26 (alterations in original) (quoting Montijo-Reyes, 436 F.3d at 24). We start with the presumption that the exercise of discretion by a government official implicates a policy judgment. See supra note 15.

As with our discussion of the discretionary nature of the conduct, the policy inquiry is influenced by the independent contractor status of Genett and Rainforest Kids. Appellants would like us to ask whether there is a policy rationale for the government's failure to coordinate the scheduling of lawn mowing and outdoor play. That is not the relevant question. The relevant question is whether there is a policy justification for assigning responsibility for such coordination to the independent contractors hired to perform maintenance and run the childcare center. To ask that question is to answer it.

The judgment to hire independent contractors presumably was based on an assessment of cost and efficiency concerns relating to the use of government-employee time. See, e.g., Williams, 50 F.3d at 310 (noting that, in choosing whether to hire an independent contractor, the United States must "weigh concerns of expense, administration, payment, access to the Premises, and a

veritable plethora of factors").  As we have noted, the product of such a weighing of factors is unquestionably a policy judgment. See supra note 16.  The decision to staff a job with independent contractors necessarily also embraces judgments about which delegated tasks require detailed instructions to ensure proper performance and which are more efficiently presented to the contractor as general obligations.  Indeed, the benefits of engaging independent contractors would be lost if the government needed to take the time to make judgments about, and provide guidance on, every aspect of every task to be performed.

In this instance, the government concluded, in effect, that the tasks of developing and enforcing a safe, compatible schedule for playtime and lawn mowing were appropriately left to the two entities directly responsible for managing the potentially conflicting activities.  As the government's judgment implicates the same policy concerns that underlie the choice to hire independent contractors in the first place, it also is protected by the discretionary function exception.[21]

---

[21] It appears that GSA's Mulero initiated discussions about scheduling after the accident at issue here, see Docket 67-8, at 8-12, which may indicate a new judgment by the government about how much responsibility to assume for coordinating safety measures. That after-the-fact conduct has no bearing, however, on our assessment of the government's liability for the accident.  See Shansky, 164 F.3d at 695 ("An agency that has discretion to make policy choices can change its view as to the proper balance of relevant concerns as time passes and experience accrues.").

-31-

The presence and scope of the independent contractor agreements here distinguish this case from others, cited by appellants, in which plaintiffs have successfully argued that the government's inaction on safety matters was not protected by either the discretionary function exception or the independent contractor defense. For example, in Whisnant, despite an independent contractor's responsibility for maintenance at the commissary on a naval base, the court rejected applicability of the discretionary function exception for a claim that the government "negligently allowed [toxic mold] to colonize the commissary's meat department over a period of three years." 400 F.3d at 1179. The court noted that the government had retained responsibility for safety, id., and it held that the government's alleged failure to control "an obvious health hazard is a matter of safety and not policy," id. at 1183. Here, by contrast, the United States assigned the responsibility for safety to Genett and Rainforest Kids, and, as we have explained, the government's inaction was shielded by that discretionary delegation of responsibility.

In Bolt v. United States, 509 F.3d 1028 (9th Cir. 2007), the court concluded that the discretionary function exception did not protect the United States from liability for a slip-and-fall accident allegedly resulting from the government's failure to remove snow and ice from a parking area at an Army apartment complex. Id. at 1030. In rejecting application of the exception,

the court not only identified an express requirement for timely snow and ice removal in the Army's Housing Handbook but also observed that any discretion to vary the timing "is [not] the type of decision-making that the discretionary function was designed to protect." Id. at 1033 (alteration in original) (internal quotation marks omitted). Bolt also offers no support for appellants' position: the government in that instance had not bestowed the safety responsibility on an independent contractor, and its own guidelines explicitly denied the discretion to delay clearing the area. Id.; see also, e.g., Coulthurst v. United States, 214 F.3d 106, 109-10 (2d Cir. 2000) (concluding that the discretionary function exception might not apply to allegedly deficient inspection of prison gym equipment, where government had responsibility for safety and inspector may have "failed to perform a diligent inspection out of laziness or was carelessly inattentive").

## III.

In exercising its conceded discretion to hire independent contractors to manage the childcare center and the maintenance/landscaping work at the Federico Degetau Federal complex, the United States could also exercise its discretion to leave to the contractors the responsibility for ensuring that Rainforest Kids' children would be out of harm's way while the grounds adjacent to their center were being mowed. Sadly,

inadequate precautions were taken by the independent contractors to protect V.C. from serious injury. For the reasons we have explained, however, the FTCA does not provide jurisdiction for a negligence action against the United States arising from that injury. We therefore affirm the dismissal of the FTCA claim with prejudice and the pendent claims under Commonwealth law without prejudice.

So ordered.