# United States Court of Appeals
## For the First Circuit

No. 19-1235

NELISSA REYES-COLÓN; ALEXIS COLÓN-GUEVARA; L.A.C.R.;
ILEANA E. DE JESÚS-COLÓN; PEDRO SÁNCHEZ-REYES; P.J.S.,

Plaintiffs, Appellants,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Torruella, Lipez, and Thompson,
Circuit Judges.

Pedro R. Vázquez, III, with whom Pedro R. Vázquez, III PSC, Jorge R. Quintana Lajara, and Quintana & Suárez, P.S.C., were on brief, for appellants.
Michael D. Weaver, Attorney, Office of the General Counsel, United States Postal Service, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Fidel A. Sevillano-Del Río, Assistant United States Attorney, Stephan J. Boardman, Chief Counsel, United States Postal Service, and Alice L.A. Covington, Appellate Counsel, Office of the General Counsel, United States Postal Service, were on brief, for appellee.

September 4, 2020

**THOMPSON**, <u>**Circuit Judge**</u>.

### Preface

A federal district judge dismissed this case for lack of subject-matter jurisdiction under the Federal Tort Claims Act ("FTCA") — lack of subject-matter jurisdiction basically means the court has no "authority to decide the case either way." <u>See</u> <u>The Fair</u> v. <u>Kohler Die & Specialty Co.</u>, 228 U.S. 22, 25 (1913) (Holmes, J., for the Court). Seeing no problem with what the judge did, we affirm.

### An FTCA Cheat Sheet

The reader's focus will be sharpened if we begin with some basic principles.

As a sovereign, the United States is immune from suit unless it consents to being sued.[1] <u>See</u>, <u>e.g.</u>, <u>Gordo-González</u> v. <u>United States</u>, 873 F.3d 32, 35 (1st Cir. 2017). The FTCA provides

---

[1] Some say the justification for limits on the power to sue a sovereign comes from the old English theory that "[t]he King can do no wrong." <u>See</u>, <u>e.g.</u>, <u>Maysonet-Robles</u> v. <u>Cabrero</u>, 323 F.3d 43, 54 (1st Cir. 2003). But others say "conceptionally it is far older":

> Zeus himself carried an aegis or breastplate, a buckler, and a thunderbolt which made him, the mythological sovereign, immune from all that could beset him. And common law provided its sovereign with the immunity of Zeus. Yet Zeus saw fit to strip himself of this protection by giving it to Athena, whereas modern sovereigns have shown much reluctance to do likewise.

<u>De Bardeleben Marine Corp.</u> v. <u>United States</u>, 451 F.2d 140, 142 (5th Cir. 1971) (Brown, C.J., for the court).

that consent, making the United States liable for certain injuries caused by government employees acting within the scope of their employment. See 28 U.S.C. § 1346. But as with many rules, exceptions exist. And if one is present, the government's immunity remains intact — so the district court will lack subject-matter jurisdiction over the tort claim. See Mahon v. United States, 742 F.3d 11, 12 (1st Cir. 2014).

The exception at issue here is the discretionary-function exception, which (as its name suggests) preserves sovereign immunity and shields the government from liability for "the exercise or performance or the failure to exercise or perform a *discretionary function* or duty on the part of a federal agency or employee of the [g]overnment, whether or not the discretion involved be abused." See 28 U.S.C. § 2680(a) (emphasis added). This exception, the Supreme Court tells us, represents "the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984). It protects the government from liability that "would seriously handicap efficient government operations." Id. at 814 (quoting United States v. Muniz, 374 U.S. 150, 163 (1963)). And it preserves the separation of powers by "prevent[ing] judicial 'second-guessing'

of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id.

A court analyzes discretionary-function-exception problems this way. After identifying "the conduct that supposedly caused the harm," the court asks two possible questions. See Mahon, 742 F.3d at 14. The first question is whether the conduct can be called "discretionary." Id. Conduct cannot be called discretionary if a federal "'statute, regulation, or policy' actually dictates 'a course of action'" — because in that scenario, the federal employee "has no choice but to follow the 'directive.'" Id. (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)). The second question (asked only if the conduct involves an element of discretion) is whether "'the exercise or non-exercise of the granted discretion is actually or potentially' affected by" legitimate "policy-related judgments," id. (quoting Fothergill v. United States, 566 F.3d 248, 252 (1st Cir. 2009)) — the "or potentially" jargon means the complained-of "acts or omissions" need only be "*susceptible* to a policy-driven analysis," regardless of whether they actually were, see Evans v. United States, 876 F.3d 375, 383 (1st Cir. 2017) (quoting Shansky v. United States, 164 F.3d 688, 692 (1st Cir. 1992)). Also and importantly, when a federal statute, regulation, or policy lets a government agent exercise discretion, a court presumes the agent's acts involve

- 4 -

policy.  See United States v. Gaubert, 499 U.S. 315, 324 (1988); Bolduc v. United States, 402 F.3d 50, 60 (1st Cir. 2005).

If the answer to each question is yes, the discretionary-function exception applies and the sovereign-immunity doctrine precludes suit on the at-issue claims.  See Mahon, 742 F.3d at 14. But if the answer to either question is no, the exception does not apply and the claims may proceed.  See id.

**How the Case Came to Us**

Now to the facts of this lawsuit.  Like the parties agree we should, we accept the complaint's well-pled allegations as true (without passing on their truth in fact, of course), see, e.g., Muñiz-Rivera v. United States, 326 F.3d 8, 11 (1st Cir. 2003), and "consider whatever evidence" they "submitted," see Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (quotation marks omitted).

Eagle Support, Inc. ("Eagle") contracted with the United States Postal Service ("Postal Service" or "Service") to provide mail-transportation services as one of the Service's "highway contract route" suppliers.  Running for four years (after several renewals), the contract spelled out the work Eagle agreed to do and the compensation the Postal Service agreed to pay.  We will have more to say about the contract later, but for now it suffices to note the following.  Eagle assumed responsibility for its mail-transportation operations, including buying or leasing and then

- 5 -

maintaining the needed vehicles and equipment; making personnel decisions (hiring, supervising, and paying drivers, for example); and handling the day-to-day mail-transportation services according to required schedules. To quote contractual language, Eagle also promised to "take proper safety and health precautions to protect the work, the workers, the public, the environment, and the property of others," including having its drivers inspect their equipment — *e.g.*, vehicle tires — to ensure the equipment is "in good working order."

While delivering mail for the Postal Service, an Eagle employee driving an Eagle truck rear-ended a school bus. The collision severely injured two minor passengers, referred to in the complaint by their initials: L.A.C.R. and P.J.S. According to the complaint, the truck's "poor state of maintenance, particularly its tires, . . . caused . . . the collision."

After exhausting administrative remedies, plaintiffs (on their own behalf and on behalf of their injured children) then sued the Postal Service in federal court under the FTCA (documents in the joint appendix on appeal show plaintiffs first sued Eagle and its insurer in federal court but eventually settled with

them).[2]  Reduced to its essence, plaintiffs' complaint accused the Service of negligently failing to inspect Eagle's vehicles for safety purposes.  The Postal Service countered with a motion to dismiss for (among other reasons) lack of subject-matter jurisdiction under the discretionary-function exception.  The judge agreed with the Postal Service and dismissed plaintiffs' complaint, precipitating this appeal.

## Our Take

Our review is de novo, see Hajdusek v. United States, 895 F.3d 146, 149 (1st Cir. 2018), which is a legalistic way of saying we critique the judge's decision without giving any deference to his views, see United States v. Tsarnaev, No. 16-6001, 2020 WL 4381578, at *51 (1st Cir. July 31, 2020).  As the party asserting federal jurisdiction, plaintiffs bear the burden of establishing its existence.  See, e.g., Gordo-González, 873 F.3d at 35.  And as we work our way through the case's issues, we "tilt[]" our analysis "toward the government's claim of immunity," interpreting the FTCA "strictly in favor of the . . . government"

---

[2] A statute called the Postal Reorganization Act says that the Postal Service can "sue and be sued," thus generally waiving immunity from suit.  See 39 U.S.C. § 401(1); see also Loeffler v. Frank, 486 U.S. 549, 556 (1988) (explaining that by "including a sue-and-be-sued clause in" the Postal Service's "charter, Congress has cast off the Service's cloak of sovereignty" (quotation marks omitted)).  But that statute also says that the FTCA governs tort suits brought against the Postal Service.  See 39 U.S.C. § 409(C); see also Fothergill, 566 F.3d at 252 n.2.

— knowing all the while that we cannot "enlarge" the FTCA "beyond such boundaries as its language plainly requires." Carroll v. United States, 661 F.3d 87, 94 (1st Cir. 2011) (quotation marks omitted).

Among its many responsibilities, the Postal Service must "give highest consideration to the prompt and economical delivery of all mail" — even when choosing "modes of transportation." See 39 U.S.C. § 101(f). And to help it fulfill its mission, the Postal Service is statutorily entitled to enter into contracts for transportation "under such terms and conditions as it deems appropriate." Id. § 5005(a)(3).

The conduct at the core of plaintiffs' claims involves the Postal Service's not inspecting "Eagle's vehicles for safety-worthiness" — that is how their briefs characterize the harm-producing conduct. So we proceed to ask whether that conduct is discretionary and susceptible to policy-related judgments.

On the first issue (was the Postal Service's inaction discretionary?), plaintiffs make three attempts to show that a federal "regulation" obliged the Postal Service to inspect Eagle's trucks — reminder: conduct is generally considered discretionary unless a federal statute, regulation, or policy specifically tells federal officials to act a particular way. See, e.g., Berkovitz, 486 U.S. at 536. None of their arguments is convincing, however.

- 8 -

Plaintiffs' lead contention focuses on a vehicle checklist in a Postal Service document called "Handbook PO-515 — Highway Contractor Safety." But the Handbooks says that "[d]rivers, clerks, or any other vehicle inspector" must "[c]heck all tires" and "notify the contractor" — here, that would be Eagle — "to correct the irregularities." And as the government notes (without contradiction from plaintiffs) another provision says that the Handbook applies to vehicles owned or leased by a contractor — again, that would be Eagle — and not to vehicles owned by the Postal Service. So the Handbook is not a discretion-constraining regulation.

Plaintiffs' next contention zeros in on various provisions in the Postal Service/Eagle contract. But conspicuously absent from their briefs is any explanation of how such a contract constitutes a federal regulation — a criticism the government raises, without a response from plaintiffs. See generally Díaz-Alarcón v. Flández-Marcel, 944 F.3d 303, 313 (1st Cir. 2019) (noting that "developing a sustained argument out of . . . legal precedents is a litigant's job, not ours" (quotation marks omitted)). But even putting that problem aside, the provisions they highlight offer them no help.

For example, plaintiffs cite and quote contract language requiring Eagle to inspect vehicles, including a safety checklist Eagle drivers must fill out daily (a checklist that mirrors the

- 9 -

one in the Handbook).  And they cite and quote contract language requiring Eagle to present "[a]ll equipment . . . for inspection at the location and time indicated by the contracting officer or authorized representative" and to have "readily available sufficient stand-by equipment . . . to perform extra trips, to permit vehicle maintenance, and to prevent delays in emergencies such as mechanical" snafus.  But as the government points out, none of the language they rely on obliges the Postal Service to inspect Eagle's vehicles — at most, the contract reserves the Postal Service's right to inspect, without requiring that the Service inspect and without saying what the Service must do to assure Eagle fulfills its contractual responsibilities.[3]

Plaintiffs' last contention centers on a statement given by an Eagle representative in the suit against Eagle and its insurer.  Asked in an interrogatory to "[e]xplain what inspection" Eagle "perform[ed]" on the truck before it collided with the bus, an Eagle representative wrote that Eagle's "[d]rivers were required to carry out a full inspection before going on their routes" — but then she added (ungrammatical phrasing in original, emphasis added):

---

[3] Another contract provision provides (emphasis ours) that "the Postal Service . . . *may*" — not "must" or "shall," we note parenthetically — "randomly inspect vehicles used in the performance of service on this contract."  And in everyday speech, "may" indicates a degree of discretion.  See, e.g., Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv., 139 S. Ct. 361, 371 (2018).

> It is *supposed* that a [Postal Service] inspector carry out the inspections. However, no [Postal Service] inspector inspected our trucks and/or trailers used to transport . . . mail that morning. No record of this inspection exists.

Yet again — as the government well says — plaintiffs never say how Eagle's assumptions about the Postal Service's obligation to inspect constitute a federal regulation that required the Service to inspect. And anyway, Eagle's surmise — "[i]t is supposed," without offering any basis to support this raw supposition — does not prove that the Service had no choice but to inspect.[4]

The bottom line is that "plaintiffs can point to no statutory or regulatory provision" explicitly requiring the Postal Service to inspect Eagle's vehicles. See Muñiz-Rivera, 326 F.3d at 16. And the absence "of such directives brands" the Postal Service's "inaction as discretionary." See id.; see also Carroll, 661 F.3d at 102 (explaining that "[w]here no federal law or policy limited the government's discretion to delegate . . . safety precautions . . . to the independent contractors, the United States

---

[4] Plaintiffs' opening brief also says that the contract "has clauses where the [Postal Service] regulates and controls Eagle's performance on a day-to-day and hour-by-hour basis." The government's answering brief calls this a "mischaracterization" of the contract. We need not referee this tussle, however. That is because the judge rejected plaintiffs' claim that the Postal Service exercised such day-to-day control and supervision over Eagle's employees as to make them federal employees. And plaintiffs concede they are not challenging that assessment on appeal.

had the flexibility to craft the balance of authority in the contracts as it saw fit").

On the second issue (was the Postal Service's discretionary conduct grounded in policy?), plaintiffs must — given our ruling on the first issue — rebut the presumption that the Service's exercise of discretion involves policy judgment. See, e.g., Gaubert, 499 U.S. at 324. Trying to do just that, plaintiffs write that by "violat[ing] a mandatory regulation," the Postal Service "cannot be deemed" to have "act[ed] . . . in furtherance of" legitimate policy concern. But having already rejected the premise of their argument (that the Service infracted a discretion-checking regulation), we easily reject their conclusion (that the Service's action had no valid policy content). And as the government well notes, if more were needed, the Postal Service's decision to exercise its statutory authority to contract out mail-transportation services required a balancing of factors (cost and safety among them) — making it a policy choice that judges cannot second-guess. See Muñiz-Rivera, 326 F.3d at 16; see also Carroll, 661 F.3d at 104 (concluding that "[t]he judgment to hire independent contractors presumably was based on an assessment of cost and efficiency concerns relating to the use of government-employee time").

So we agree with the judge and the government that the Postal Service's discretionary policy judgment here is of the type

Congress intended to shield from liability.  Which means we also agree with the judge and the government that the discretionary-function exception divests the federal courts of jurisdiction over plaintiffs' suit.

Wait a minute, says plaintiffs.  Hoping for a different conclusion, they insist the judge "deprived [them] of a basic opportunity to put their best foot forward" on the jurisdiction issue by denying their request for discovery.  In their view, the uncertain meaning of some of the contract's clauses "required discovery exploration."  Their principal example is a contract provision requiring that "[t]ractors and trailers used on the route . . . be spotted as directed by the contracting officer or authorized representative."  To their way of thinking, "[i]t is not clear . . . what the term 'spotted' refers to" when it comes "to a duty to inspect."  They also write that the "contract . . . references a list of exhibits" that they have not yet "seen."  Which to them means the judge "should have allowed [their] case to proceed into discovery."  And based on "the foregoing," they think we must vacate the judgment and remand the case for further proceedings.

But like the government, we believe plaintiffs' theory faces an insurmountable obstacle — which is they never made this argument in the district court.  We know this because their papers opposing a jurisdictional dismissal simply "request[ed] an

opportunity to do discovery and fully develop the record and if necessary to amend the pleadings" (or variants of that), without specifying (as they do here) how discovery might help them avoid dismissal. The Federal Reporter is brimming with opinions from us saying things like: "arguments not seasonably advanced below cannot be raised for the first time on appeal." See Eldridge v. Gordon Bros. Grp., L.L.C., 863 F.3d 66, 85 (1st Cir. 2017) (quotation marks omitted). And plaintiffs make no effort to fit their situation within the "narrowly configured and sparingly dispensed" exceptions to the raise-or-waive rule (as it is known). See Daigle v. Me. Med. Ctr., Inc., 14 F.3d 684, 688 (1st Cir. 1994); see also B & T Masonry Const. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 41 (1st Cir. 2004) ("recogniz[ing] that an appellate court has the authority, in its discretion, to consider theories not articulated below," though stressing "that exceptions of this kind . . . should be few and far between," and noting that "[t]he typical case involves an issue that is one of paramount importance and holds the potential for a miscarriage of justice" (quotation marks omitted)); Correa v. Hosp. S.F., 69 F.3d 1184, 1196 (1st Cir. 1995) (explaining that "appellate discretion" here "should not be affirmatively exercised unless error is plain and

the equities heavily preponderate in favor of correcting it").[5]
We thus say no more on the discovery issue.

## Conclusion

We sympathize with plaintiffs over their children's plight. But as "hard as our sympathies may pull us, our duty to maintain the integrity of the substantive law pulls harder." Mahon, 742 F.3d at 16 (quotation marks omitted); see also 28 U.S.C. § 453 (providing that federal justices and judges must "administer justice without respect to persons, and do equal right to the poor and to the rich," and must also "faithfully and impartially discharge and perform all the duties incumbent upon" them "under the Constitution and laws of the United States"). And because the FTCA's discretionary-function exception applies here, we have no choice but to conclude (as the judge did) that the district court lacked jurisdiction over plaintiffs' claims.

---

[5] Plaintiffs suggest that because they argued below that the Postal Service "was required to inspect," they sufficiently preserved *all* arguments related to that claim — including the specific discovery arguments they now make on appeal. We have rejected that kind of contention before and (consistent with controlling precedent) must do so again. See, e.g., Employers Ins. Co. of Wausau v. OneBeacon Am. Ins. Co., 744 F.3d 25, 29 (1st Cir. 2014) (stressing that "theories not *squarely* presented below typically cannot be advanced here," and holding that "[w]hen a party places an issue as broad as 'contract interpretation' before the [district] court, it does not thereby preserve every argument that might fall under that rubric" (quotation marks omitted)); United States v. Slade, 980 F.2d 27, 31 (1st Cir. 1992) (emphasizing that "a party is not at liberty to articulate specific arguments for the first time on appeal simply because the general issue was before the district court").

*Affirmed.   No costs to either party.*