# United States Court of Appeals
## For the First Circuit

No. 22-1213

EMMANUEL THIERSAINT,

Plaintiff, Appellant,

v.

DEPARTMENT OF HOMELAND SECURITY; UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT; WILLIAM CHAMBERS, in his individual
capacity; SUFFOLK COUNTY SHERIFF'S DEPARTMENT; UNITED STATES,

Defendants, Appellees,

JOHN DOE DEFENDANTS 1-10, unknown ICE Agents, in their
individual capacities; JOHN DOE DEFENDANTS 11-16, unknown
Officers of the Suffolk County Sheriff's Department, in their
individual capacities,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Thompson, Circuit Judges.

Isabelle Barnard, Law Student Intern, and Emma Frank, with
whom Anant K. Saraswat, Gregory F. Corbett, Bryan S. Conley,
Michelle Nyein, Wolf Greenfield & Sacks, P.C., Muneer I. Ahmad,
Kirby Tyrrell, Angela Uribe, Law Student Intern, Kailyn Gaines,
Law Student Intern, Talia Rothstein, Law Student Intern, and Jerome
N. Frank Legal Services Organization, were on brief, for appellant.
Eve A. Piemonte, Assistant United States Attorney, with whom
Rachael S. Rollins, United States Attorney, was on brief, for

appellee United States.

Melissa J. Garand, Assistant General Counsel, with whom Maura Healey, Attorney General, and Allen H. Forbes, Special Assistant Attorney General, were on brief, for appellee Suffolk County Sheriff's Department.

November 6, 2023

**BARRON, Chief Judge.** Emmanuel Thiersaint, a Haitian national, appeals the District Court's grant of summary judgment to the United States on his Federal Tort Claims Act ("FTCA") claims and to the Suffolk County Sherriff's Department ("SCSD") on his Rehabilitation Act ("RHA"), 29 U.S.C. § 794, and Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, claims. All the FTCA claims concern his alleged mistreatment by officers of the U.S. Immigration and Customs Enforcement ("ICE") during his detention and transportation while he was in immigration custody. We affirm in part and vacate in part.

## I.

The following facts are undisputed. Thiersaint has been a lawful permanent resident of the United States since 1994. After he was injured in a 1997 car accident, his right leg was amputated above the knee, and a metal rod was inserted into his right arm. The rod prevents him from using crutches or otherwise placing weight on that arm without experiencing pain. Thiersaint, who also suffers from depression and anxiety, has used a wheelchair to assist his mobility.

In 2015, Thiersaint was convicted of a state-law offense in Connecticut and was sentenced to a six-month prison term. Upon his completion of that sentence in February 2016, he was taken into immigration custody by ICE officers because he had been identified by ICE as an aggravated felon who was eligible for

removal to Haiti based on his 2015 conviction and earlier convictions.

Thiersaint was held while in immigration custody in detention facilities in Massachusetts, Louisiana, and Florida. He was also transported while in such custody between those facilities in vehicles that passed through those three states and Connecticut and New Jersey, as well as in airplanes that flew between New Jersey, Louisiana, and Florida. Thiersaint was released from immigration custody on April 1, 2016.

Thiersaint filed this action in the United States District Court for the District of Massachusetts on November 16, 2018. His operative complaint[1] sets forth FTCA claims against the United States for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress based on the treatment to which he was allegedly subjected while he was in immigration custody in Connecticut, Massachusetts, New Jersey, Louisiana, and Florida.[2] Specifically, he alleges that he was subjected to tortious conduct by ICE officers in Connecticut, Massachusetts, and Florida while he was being transported in

---

[1] This operative complaint amended Thiersaint's original complaint and removed all claims for injunctive relief.

[2] One of Thiersaint's FTCA claims named the U.S. Department of Homeland Security ("DHS") and ICE, rather than the United States, as defendants. Thiersaint moved to substitute the United States as the sole defendant on that count. The District Court granted the motion.

- 4 -

vehicles that were not wheelchair-accessible and when he was entering and exiting those vehicles; in New Jersey, Louisiana, and Florida when he was forced to drag himself in and out of the various airplanes on which he was transported; and in Louisiana when he was held in a detention facility that was not accessible to persons who use wheelchairs. His claims pertain to tortious treatment that he alleged occurred on specific dates.

Thiersaint's operative complaint also sets forth claims under the RHA and the ADA against SCSD. He alleges in these claims that SCSD discriminated against him based on his disability during his detention at the Suffolk County House of Correction ("SCHC"), which is a facility operated by SCSD.[3]

After discovery, the defendants moved for summary judgment on all the claims, which the District Court granted. Thiersaint timely appealed.

## II.

We review the District Court's summary-judgment rulings de novo and draw all reasonable inferences in favor of Thiersaint as the party against whom summary judgment was entered.

---

[3] In addition to claims against the United States, Thiersaint also brought a 42 U.S.C. § 1983 claim against six unknown SCSD officers and a claim under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), against ICE Officer William Chambers and ten unknown ICE officers. He later voluntarily dismissed the unknown SCSD and ICE defendants. The District Court granted summary judgment to Chambers, and Thiersaint does not appear to be appealing that ruling.

Pleasantdale Condos., LLC v. Wakefield, 37 F.4th 728, 732-33 (1st Cir. 2022). Summary judgment is appropriate if, based on the record, there remains no genuine dispute of material fact -- that is, if, based on the record, there is no factual determination which a "rational factfinder" could make as to the "existence or nonexistence" of a fact that "has the potential to change the outcome of the suit" -- such that "the moving party is entitled to judgment as a matter of law." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4-5 (1st Cir. 2010).

## III.

We begin with Thiersaint's challenge to the portion of the District Court's grant of summary judgment to the United States that concerns the FTCA claims in which Thiersaint alleges tortious conduct by ICE officers in Massachusetts; Connecticut; New Jersey; Florida; and Louisiana, insofar as that conduct pertains to his air transportation. The District Court based that portion of its grant of summary judgment to the United States on the United States's sovereign immunity. See Reyes-Colón v. United States, 974 F.3d 56, 58 (1st Cir. 2020). The District Court held that the FTCA did not waive the United States's sovereign immunity as to the claims just described, see 28 U.S.C. § 2674; Fothergill v. United States, 566 F.3d 248, 252 (1st Cir. 2009), because the "discretionary function" exception to the immunity's waiver that is set forth in 28 U.S.C. § 2680 applied to some of those claims

while the "independent contractor" exception to the immunity's waiver that is set forth in 28 U.S.C. § 2671 applied to the rest of them.

We start with Thiersaint's challenge to the part of the District Court's ruling that relies on the discretionary-function exception. We then address his challenge to the part that relies on the independent-contractor exception.

**A.**

The discretionary-function exception excludes from the FTCA's waiver of sovereign immunity "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty" by the United States or its employees. 28 U.S.C. § 2680(a). The District Court determined that this exception barred Thiersaint's ground-transportation-based claims for the tortious conduct to which he alleges that ICE officers subjected him in Florida on March 3 and March 17, 2016, and Connecticut on February 29, 2016.

To determine whether a claim falls within the discretionary-function exception, a court first "must 'identify the conduct that allegedly caused the harm.'" Davallou v. United States, 998 F.3d 502, 504-05 (1st Cir. 2021) (quoting Shansky v. United States, 164 F.3d 688, 690-91 (1st Cir. 1999)). A court then "must ask whether that conduct is both 'discretionary' and

- 7 -

'susceptible to policy analysis.'" Id. at 505 (citation omitted) (quoting Shansky, 164 F.3d at 691-92).

The District Court determined that the harm-causing conduct as to these claims allegedly occurred "when officers . . . 'forced Thiersaint to board vans . . . without assistance'" in Florida on the two dates in question and when "Thiersaint . . . was forced to crawl into and out of vehicles without assistance and [when] ICE officers subjected him to improper treatment" in Connecticut on the one date implicated. The District Court then rejected Thiersaint's contention that this conduct was not discretionary because it was barred by, respectively, the RHA, the Department of Homeland Security ("DHS") regulation implementing the RHA, 6 C.F.R. § 15.30, and the 2011 version of ICE publication Performance-Based National Detention Standards ("PBNDS"). See Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988) ("[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has no rightful option but to adhere to the directive."). The District Court reasoned that none of these authorities provided a basis on which a rational juror could find that the ICE officers had no discretion to engage in their

- 8 -

allegedly tortious conduct because each of these measures was "too broad to mandate conduct." We cannot agree with that reasoning.[4]

**1.**

We start with the District Court's ruling insofar as it concerns the RHA. That statute provides that "[n]o . . . individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity . . . conducted by any [e]xecutive agency." 29 U.S.C. § 794(a).

There is no dispute that ICE officers are subject to the RHA's requirements, see D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 39 (1st Cir. 2012) ("The Rehabilitation Act applies to federal agencies and recipients of federal funding . . . ."), or that the RHA requires those subject to it to make reasonable

---

[4] We note that the United States did not advance in its briefing to the District Court or to us any argument that, insofar as Thiersaint relied on the RHA to show that ICE officers had no discretion to decline to provide him with reasonable accommodations, Thiersaint's FTCA claims were barred because the RHA's remedial scheme does not provide for damages against the United States. See Abreu v. United States, 468 F.3d 20 (1st Cir. 2006); Lane v. Pena, 518 U.S. 187 (1996). We need not address the effect, if any, of Abreu on Thiersaint's claims because although "[i]t is well-established law that such jurisdictional defenses cannot be waived by the parties and may be raised . . . by a court sua sponte," it is not required that a court do so. Hydrogen Tech. Corp. v. United States, 831 F.2d 1155, 1162 n.6 (1st Cir. 1987) (emphasis added).

accommodations for a person's disability in some circumstances, see, e.g., id. at 41; Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 19 (1st Cir. 2004). The District Court nonetheless determined that the RHA did not render the allegedly tortious conduct underlying this set of FTCA claims nondiscretionary as a matter of law because the RHA was "too broad to mandate conduct."

To support the determination, the District Court relied solely on three district-court cases and one out-of-circuit appellate decision: Hooker v. United States, No. 17-cv-345-JNL, 2019 WL 4784593, at *5 (D. Me. Sept. 30, 2019); Chaney v. United States, 658 F. App'x 984, 990-91 (11th Cir. 2016) (per curiam); Adetiloye v. Cass Cnty. Warden, No. 3:14-cv-05, 2015 WL 4208708, at *4 (D.N.D. July 10, 2015), aff'd, No. 15-2682 (8th Cir. Nov. 3, 2015); and García-Feliciano v. United States, 101 F. Supp. 3d 142, 147 (D.P.R. 2015). But, as we will next explain, these cases do not show that there is no genuine issue of disputed fact as to whether the RHA's mandate to make reasonable accommodations for persons with disabilities in some circumstances barred the allegedly tortious conduct that is at issue in this set of claims.

To be sure, Chaney did hold that the discretionary-function exception applied in a case that involved FTCA claims that a plaintiff had brought against U.S. Bureau of Prisons ("BOP") officials based on their allegedly tortious mistreatment of him while he was in their custody and being transported by them. But

the court explained in Chaney that the exception applied there despite the plaintiff's argument to the contrary only because the plaintiff had "identified no federal statute, regulation, or policy that required [the BOP official supervising the plaintiff] to provide physical assistance to inmates entering or exiting a transportation vehicle." 658 F. App'x at 990-91. Thus, that case -- which does not address the RHA at all -- does not purport to address the question that matters for present purposes: is there record support here for concluding that the RHA's reasonable-accommodation requirement barred the allegedly tortious conduct that grounds the claims that are our concern?

García-Feliciano and Hooker each also addressed whether the discretionary-function exception applied to a claim in which a person alleged that he had been subjected to tortious conduct by federal officials while he was in their custody, and each also held that the exception did not apply despite a plaintiff's contrary contention. Moreover, each differs from Chaney in that each involved a plaintiff who had identified a federal policy document that assertedly imposed a duty on the defendants that their allegedly tortious conduct violated. See García-Feliciano, 101 F. Supp. 3d at 145 n.4, 146-47 (rejecting plaintiff's claim because, while the document identified by plaintiff did create some nondiscretionary duties, the choice that created the plaintiff's harm fell within the discretion retained by the

- 11 -

government employee); Hooker, 2019 WL 4784593, at \*5 (holding that the conduct mandated by the policy document identified by the plaintiff did not encompass the omission which the plaintiff claimed caused his injury).

But, like Chaney, neither of these cases purported to pass on whether the RHA's requirement to provide reasonable accommodations to persons with disabilities barred, as a matter of law, the type of allegedly tortious conduct that is at issue in the claims at hand. Thus, neither case provides support for the conclusion that there is no record support that would permit a rational factfinder to determine that the RHA did bar such conduct here. Thus, these cases, too, fail to show that, as a matter of law, the discretionary-function exception has no application here because, as a matter of law, the RHA's reasonable-accommodation requirement does not bar the allegedly tortious conduct that undergirds the claims at issue.

The fourth case on which the District Court relied, Adetiloye, is an out-of-circuit decision that does not concern the RHA. Rather, it concerns 18 U.S.C. § 4086, which provides that "United States marshals shall provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending commitment to an institution."

Adetiloye held that § 4086 and its accompanying regulations did not preclude application of the discretionary-

function exception. 2015 WL 4208708, at *4. Moreover, Adetiloye did so on the ground that the provision did "not mandate any specific course of conduct" when marshals were transporting prisoners but "rather . . . [gave U.S. marshals] wide discretion" in how to carry out those tasks. Id.

At first glance, then, Adetiloye might appear to provide more support -- at least analogically -- for the District Court's conclusion than any of the other three cases that we have just considered. Nonetheless, we do not read Adetiloye to hold that just because § 4086 permits U.S. marshals to exercise wide discretion in transporting prisoners there are no circumstances in which that statute imposes a mandatory duty on U.S. marshals in transporting prisoners. Indeed, Adetiloye cites precedents holding that statutes and policies that confer broad discretion to comply with the duties that those statutes and policies imposed can still suffice in some circumstances to preclude the application of the discretionary-function exception in cases involving the treatment of those in federal custody. See McKinney v. United States, 950 F. Supp. 2d 923, 926, 928, 930 (N.D. Tex. 2013) (finding an FTCA claim against the BOP -- which is required by 18 U.S.C. § 4042 to provide for the safekeeping of federal prisoners -- was not barred by the discretionary-function exception when correctional officers failed to physically assist a fully restrained, elderly, and ill inmate who was exiting an airplane

- 13 -

and whose "safety was very clearly at risk"); <u>García-Feliciano</u> v. <u>United States</u>, No. 12-1959, 2014 WL 1653143, at *3 (D.P.R. Apr. 23, 2014) (determining that "the discretionary function exception should not apply where two causes -- one discretionary [whether to assist a restrained prisoner] and one not [whether to restrain a prisoner] -- are said to cause the plaintiff's injury, especially where the nondiscretionary cause is primarily responsible for the plaintiff's injuries"). Thus, we do not see how <u>Adetiloye</u> supports the conclusion that, because those who are subject to the RHA's mandate to provide reasonable accommodations to persons with disabilities retain discretion to determine how to comply with that mandate, the RHA cannot, as a matter of law, preclude application of the discretionary-function exception here. And thus, we do not see how <u>Adetiloye</u> provides support for the conclusion that, as a matter of law, the RHA does not preclude the application of the discretionary-function exception to the tortious conduct alleged here, insofar as a reasonable factfinder could find on this record that the allegedly tortious conduct was barred by the mandate to provide a reasonable accommodation that the RHA indisputably does impose in some circumstances.

To buttress the District Court's reasoning, the United States also points to <u>Menolascina</u> v. <u>United States</u>, No. 12-C-90, 2013 WL 707920, at *2 (N.D. Ill. Feb. 26, 2013) -- an unreported, out-of-circuit district-court case. In that case, like in

- 14 -

Adetiloye, the district court applied the discretionary-function exception after ruling that § 4086 "[does] not prescribe any specific course of conduct, but rather allow[s] the marshals wide discretion." Id. But the district court in Menolascina clarified that "[t]his is not to say that everything a marshal might do while transporting a prisoner is beyond the reach of the FTCA[,]" id. at *3, as it explained that if, for example, "a marshal fell asleep at the wheel while driving prisoners to the courthouse . . . it would be difficult to fashion an argument that the discretionary function exemption would apply . . . ." Id. In fact, the district court there went on to explain why the actions of the marshals in Menolascina's case differed from the conduct of falling asleep at the wheel, and thus why those actions fell within the discretionary-function exception. Id. Accordingly, Menolascina does not suggest that Thiersaint's allegations that ICE officers entirely disregarded the duty imposed by the RHA during his transportation at issue in the claims at hand is foreclosed by the discretionary-function exception insofar as a reasonable factfinder could determine that the allegedly tortious conduct was barred by the statute's reasonable-accommodations requirement.

The United States advances one additional argument in support of the District Court's ruling -- namely, that other courts have found that the discretionary-function exception applies to cases where incarcerated persons with disabilities have been

- 15 -

transported without accommodations. See Cooke v. United States, No. 5:19-CT-3321-M, 2021 WL 1988163, at *4 (E.D.N.C. May 18, 2021); Vinzant v. United States, 458 F. App'x 329, 333 (5th Cir. 2012) (per curiam); Roble v. United States Gov't, No. PX-16-4045, 2018 WL 1014928, at *5 (D. Md. Feb. 22, 2018); Ward v. United States, No. 5:15-CT-3129-FL, 2017 WL 829241, at *1-4 (E.D.N.C. Mar. 2, 2017); Crane v. United States, No. 3:10-68-AC, 2011 WL 7277317, at *7-8 (D. Or. Nov. 29, 2011). But each of those decisions rested on the plaintiff's failure to identify any specific authority that prohibited or compelled the way that the relevant government actor carried out the transport. See Cooke, 2021 WL 1988163, at *3; Vinzant, 458 F. App'x at 333 ("[The plaintiff] points to no policy binding on the U.S. Marshals Service requiring Marshals to secure prisoners with seatbelts."); Roble, 2018 WL 1014928, at *5 ("[The plaintiff] has not identified any statute or regulation which compels BOP inmates to be belted during bus transport."); Ward, 2017 WL 829241, at *4 ("The crux of plaintiff's claim is that BOP employees did not properly assist him in exiting the transportation van, a task on which the BOP policy is silent."); Crane, 2011 WL 7277317, at *6. Thus, because the District Court did not hold -- and the United States does not offer any argument for our concluding -- that no juror could reasonably find that the RHA's mandate to provide a reasonable accommodation to a person with a disability in some circumstances would not apply in these

- 16 -

circumstances, these decisions also provide no support for the District Court's ruling. We therefore vacate the District Court's grant of summary judgment to the United States on Thiersaint's claims related to his ground transportation in Florida on March 3 and March 17, 2016 and his ground transportation in Connecticut on February 29, 2016.[5]

## 2.

Thiersaint separately contends that, independent of the RHA, the DHS's regulation implementing that statute, 6 C.F.R. § 15.30(a), and four sections of the PBNDS imposed "a nondiscretionary obligation on ICE officers" that was violated by ICE officers during Thiersaint's transportation. And each of these measures, like the RHA, uses the word "shall" in setting forth the requirement that Thiersaint contends rendered nondiscretionary the allegedly tortious conduct by the ICE officers that undergirds the relevant claims. Nonetheless, the District Court was not persuaded. Instead, it held that each measure was like the RHA

---

[5] We take no view on any of the issues we have not explicitly resolved, including whether the record supportably shows that the ICE officers' conduct at issue here violated the RHA or, if the record does not show as much, whether the record supportably shows that their conduct is not shielded by the discretionary-function exception because their conduct was not subject to policy analysis. We leave it to the District Court to address those questions in the first instance.

itself, because each set forth a directive that was itself "too broad to mandate conduct."

But, given the use of the word "shall" in these measures, we see no evident text-based reason to conclude that each is in its nature incapable of imposing a duty that would bar the tortious conduct this set of Thiersaint's FTCA claims alleges. See Bd. of Pardons v. Allen, 482 U.S. 369, 377 (1987) (characterizing "shall" as "mandatory language"); Stein v. Royal Bank of Can., 239 F.3d 389, 392-93 (1st Cir. 2001) (same); Muniz v. Sabol, 517 F.3d 29, 36 (1st Cir. 2008) (same); Claudio-De León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 46 (1st Cir. 2014) ("[I]t is axiomatic that the word 'shall' has a mandatory connotation."). Nor did the District Court identify any such text-based reason for so concluding. Instead, the District Court simply relied on the same precedents above. But, for the same reasons that we conclude that they fail to show that the RHA does not preclude application of the discretionary-function exception to the claims in question, they also fail to show that these other measures do not. Thus, we also must vacate the District Court's grant of summary judgment as to this set of claims insofar as that grant rests on the determination that, as a matter of law, none of these measures precludes application of the discretionary-function exception as

- 18 -

to such claims because each measure is too broad to mandate conduct.[6]

**B.**

We turn, then, to the portion of the District Court's grant of summary judgment to the United States on the FTCA claims that rests on the application of the "independent contractor" exception to the FTCA's waiver of sovereign immunity. That exception exists because the FTCA's waiver of sovereign immunity applies only to claims against the United States for "personal injury or death caused by the negligent or wrongful act or omission of any <u>employee of the Government</u> while acting within the scope of his office or employment," 28 U.S.C. § 1346(b)(1) (emphasis added), and the definition of a government employee for FTCA purposes "does not include any contractor with the United States," 28 U.S.C. § 2671. Accordingly, under the independent-contractor exception, the United States cannot be held liable for the negligence of "employees of government contractors whose daily

---

6 We take no position on whether there may be other reasons, not addressed by the District Court, that any or all of these sources may not contain mandatory directives such that conduct violating them falls within the FTCA's discretionary-function exception.

operations are not closely supervised by United States officials."

Carroll v. United States, 661 F.3d 87, 92 (1st Cir. 2011).

The District Court relied on this exception in granting summary judgment to the United States on Thiersaint's FTCA claims that concern his air transportation in Florida, New Jersey, and Louisiana on February 29, March 3, March 17, and March 21, 2016. It also relied on this exception in granting summary judgment to the United States on Thiersaint's FTCA claims that concern his ground transportation in Massachusetts and Connecticut on February 18, March 21, and April 1, 2016.[7] The District Court reasoned that the exception applied to all these claims because the record indisputably established that the allegedly tortious conduct underlying each claim was caused by a contractor over whom the

_____

[7] The District Court also relied on the independent-contractor exception in granting summary judgment to the United States on Thiersaint's FTCA claims that concern his ground transportation in Massachusetts on February 5, 2016, and March 22, 2016. Because Thiersaint does not appear to challenge the District Court's ruling as to those claims on appeal, we have no occasion to address it. We note that Thiersaint does appear to be appealing the February 5, 2016, transportation-related claim based on a mistaken understanding that the District Court held that the discretionary-function exception barred his claim pertaining to the transportation that occurred on that date. However, the District Court only held that the independent-contractor exception -- and not the discretionary-function exception -- barred the February 5th claim. Moreover, we note that the District Court appears to have ruled on the claim pertaining to the ground transportation that occurred on April 1, 2016, twice (once treating it as a Connecticut ground transport and once treating it as a Massachusetts ground transport). There appears, however, to be one ground transport that occurred on April 1, 2016.

United States did not "exercise[] day-to-day supervision and control."  Id. at 95.  Here too, we cannot agree.

**1.**

There is no dispute that Thiersaint was in ICE custody during the flights in question.  The only dispute concerns whether it was ICE officers or independent contractors retained by ICE who were responsible for the tortious conduct alleged to have occurred in the claims predicated on these flights.

In support of the District Court's ruling that, as a matter of law, the independent-contractor exception applied to the flight-related claims, the United States asserts that the record indisputably shows that Thiersaint's "transportation by air in New Jersey, Louisiana, and Florida, was pursuant to a contract between the United States and . . . [contractor CSI Aviation, Inc. ("CSI")]."  The United States rests this assertion on the undisputed evidence in the record that establishes that there was a contract between the United States and CSI for detainee transport and the fact that this contract states that CSI will "provide air charter flight services for . . . flights originating out of . . . Miami, Florida and Alexandria, Louisiana . . . ."  The United States then contends, based solely on the terms of the CSI contract, that it delegated to CSI exclusively the task of putting ICE detainees on and removing them from the aircraft, such that the record must be deemed to establish that no other actor or

entity was responsible for performing that task. See id. at 97 (explaining that the independent-contractor exception to the FTCA may not be triggered if the United States "retain[ed] responsibility for a discrete aspect of [the contractor's] operations" and injury was caused by the "aspect" over which the United States exerted control).

The United States does not challenge Thiersaint's assertion (made in his briefing and at oral argument) that the United States bears the burden of showing that a claim under the FTCA is encompassed by the independent-contractor exception to the FTCA's general waiver of sovereign immunity. Without deciding the burden-shifting question,[8] we follow the parties' lead. See Hydrogen Tech. Corp. v. United States, 831 F.2d 1155, 1162 n.6 (1st Cir. 1987) (recognizing that some courts have adopted this burden-shifting approach); see, e.g., S.R.P. ex rel. Abunabba v. United States, 676 F.3d 329, 333 n.2 (3rd Cir. 2012) ("[J]ust as a plaintiff cannot be expected to disprove every affirmative defense that a defendant could potentially raise, so too should a plaintiff not be expected to disprove every exception to the FTCA."); Valdez v. United States, 56 F.3d 1177, 1179 (9th Cir.

---

[8] We note that the Fourth Circuit has read our precedent to say that we have decided that the burden of persuasion to defeat the assertion of an exception to the FTCA waiver is on the plaintiff. Hawes v. United States, 409 F.3d 213, 216 (4th Cir. 2005). We do not read our precedent to have so held. See Hydrogen Tech. Corp., 831 F.2d at 1162 n.6.

1995); Stewart v. United States, 199 F.2d 517, 520 (7th Cir. 1952). But see Autery v. United States, 992 F.2d 1523, 1526 n.6 (11th Cir. 1993); Kiehn v. United States, 984 F.2d 1100, 1105 n.7 (10th Cir. 1993). And, as we will explain, the record fails to show that there is no genuine issue of material fact as to whether the United States has met that burden.

For one thing, as Thiersaint points out, the contracts between ICE and CSI that authorize CSI to transport ICE detainees out of the Miami and Alexandria airports plainly cannot support a grant of summary judgment on all the claims at issue based on the independent-contractor exception. Those contracts do authorize CSI to transport ICE detainees out of the Miami and Alexandria airports. They do not, however, purport to authorize CSI to transport ICE detainees out of the Newark, New Jersey airport. And the United States has failed to provide any other evidence that CSI conducted air transportation out of that airport. At a minimum, then, the United States has not conclusively met its burden -- which we assume it has -- to establish that CSI operated the Newark flight on February 29, 2016, on which Thiersaint alleges tortious conduct occurred.

Moreover, the CSI contract does not state that CSI was the exclusive provider of transportation from even the airports to which the contract refers, and the record includes a deposition in which an ICE officer discussed working with a different contractor

than CSI to provide flights out of Alexandria, Louisiana, even though the contract on which the United States relies in concluding that the record establishes that the independent-contractor exception applies provides that CSI will operate flights from that location. Thus, it is not even clear from the record that CSI provided the transportation at issue on any of the dates in question, let alone that "CSI was responsible for assisting [Thiersaint] with embarking and disembarking from airplanes."

Finally, with respect to the duties assigned to CSI under the contract, it states in relevant part that CSI's "[g]uard crew duties may normally include, but are not limited to, the following tasks: . . . loading and unloading alien nationals (including those handicapped and/or requiring special assistance)." That is significant because, as Thiersaint argues, the phrase "may normally include" is ambiguous as to whether the "loading and unloading" of detainees was undertaken by CSI on every flight in question. Indeed, as Thiersaint points out, there is record evidence (in the form of depositions from ICE officers explaining that they sometimes assisted with the boarding and disembarking of detainees) that would support a rational factfinder's determination that the duty of "loading and unloading" detainees was not exclusively performed by CSI.

The United States disagrees that the contract is ambiguous in the relevant sense, although it does not dispute that

if the contract is ambiguous, the content of that ambiguous term would be a question of fact. But, beyond asserting that CSI was responsible for Thiersaint's "embarking and debarking aircraft," the United States develops no argument as to why the contract is clear in the relevant respect. And, like the District Court, the United States does not grapple with the "may normally include" language that would seem to condition the delegation of the relevant duty and thus to contemplate scenarios in which the relevant duty would not be performed by CSI.

We thus cannot see how we could conclude, on this record, that, as a matter of law, the United States has met its burden to show that the relevant duty was delegated to CSI. And, given that the United States does not contest that it bears the burden to prove that the independent-contractor exception applies here, we must vacate the District Court's independent-contractor-exception-based grant of summary judgment as to these air-transportation-related claims.

## 2.

Thiersaint next challenges the District Court's independent-contractor-exception-based grant of summary judgment to the United States on his claims related to his ground transportation in Massachusetts and Connecticut on February 18,

March 21, and April 1, 2016.[9] Once again, there is no dispute that Thiersaint was in ICE custody on the dates in question. And, once again, Thiersaint does not dispute that the "independent contractor" exception to the FTCA would bar the claims if the injuries that he alleged that he suffered were solely caused by an independent contractor acting within the terms of its contract. But he does argue that the United States has failed to meet its burden to show, as a matter of law, that it is more likely than not that the injuries were so caused. And, if he is right about that, the grant of summary judgment against him as to these claims cannot stand, insofar as it is based on the independent-contractor exception.

The United States contends that the grant of summary judgment on this basis must be affirmed because the record indisputably establishes that the Franklin County Sheriff's Office ("FCSO") -- and thus, an independent contractor's personnel, rather than ICE officers -- transported Thiersaint on the dates in question. Thiersaint responds by arguing that because the evidence does not indisputably show that it is more likely than not that the United States had contracted with FCSO to allow for

_____

[9] We note that Thiersaint stated in one of his filings below, Plaintiff's Opposition to the Government's Statement of Material Facts Pursuant to Local Rule 56.1, that he does not dispute that FCSO transported him on February 18, March 21, and April 1, 2016. However, neither party addresses this issue on appeal, so we have no occasion to address it.

transportation of the kind during which the allegedly tortious conduct occurred, the evidence also fails to establish conclusively that FCSO personnel rather than ICE officers were responsible for the conduct alleged to be tortious in these claims.[10]

The United States hinges its contention on the terms of its contract with FCSO for detainee transport. That contract, however, authorizes FCSO to transport detainees only "upon request of the Federal Government . . . for federal prisoners housed at [FCSO's] facility to and from a medical facility for outpatient care, and . . . for federal prisoners admitted to a medical facility," and, "upon request of the [United States Marshals,] . . . to provide transportation . . . for federal prisoners housed at [FCSO's facility] to and from the U.S. Courthouse." Moreover, the contract expressly forbids FCSO from "relocat[ing] a federal detainee from one facility under its

---

[10] As with his air-travel claims, Thiersaint also contends that the United States directly owed him several duties, including a duty to provide "an accessible vehicle" for his ground transportation as well as a duty to train independent contractors on how to transport detainees with disabilities, and that the breach of both duties caused his injuries. Given that the District Court did not address this contention in granting summary judgment to the United States as it relates to either his air travel or his ground transportation, we take no view on its merits and leave it to the District Court to address in the first instance on remand. See LimoLiner, Inc. v. Dattco, Inc., 839 F.3d 61, 62 (1st Cir. 2016).

control to another facility not described in this Agreement without permission of the Federal Government."

Thus, because the only "facility under [FCSO's] control" specified in the contract appears to be the Franklin County Jail, we agree with Thiersaint that the contract would appear to forbid transportation of a detainee by FCSO to and from the Franklin County Jail to and from anywhere other than a medical facility or a U.S. Courthouse "without permission of the Federal Government." As a result, the terms of the contract itself appear to supportably show that, absent a request by the United States, the United States did not contractually delegate to FCSO Thiersaint's transportation from the Franklin County Jail to SCHC on February 18, 2016,[11] from ICE's office in Hartford, Connecticut to the Franklin County Jail on March 21, 2016, or from the Franklin County Jail to ICE's office in Hartford on April 1, 2016. Yet the United States does not identify anything in the record that shows that such a request was made for any such transportation of Thiersaint on those three dates.

Thus, because the United States does not contest that it is their burden to prove that the independent-contractor exception

---

[11] The District Court referred to Thiersaint's February 18, 2016 transport as a ground-transportation-based claim "in Connecticut." However, we address this claim as a Massachusetts ground-transportation-based claim because it alleges that Thiersaint was transported from a detention facility in Massachusetts to another detention facility in Massachusetts.

applies here, the United States cannot rely on the independent-contractor exception to the FTCA to shield itself on summary judgment from Thiersaint's claims related to that transportation.[12] Accordingly, we vacate the District Court's grant of summary judgment to the United States on Thiersaint's claims related to his ground transportation in Massachusetts and Connecticut on February 18, March 21, and April 1, 2016.

## IV.

There remains to be addressed the District Court's grant of summary judgment to the United States on Thiersaint's FTCA claims concerning his detention in Louisiana from February 29 to March 3, 2016 and March 17 to March 21, 2016. Louisiana is a civil-law jurisdiction, and the District Court determined that these claims were time-barred under La. Civ. Code Ann. art. 3492, which states that "[d]elictual actions are subject to a liberative

---

[12] The United States does correctly point out that the contract had an additional provision that "[f]or administrative convenience" allowed the United States to request that FCSO provide "services not listed in" the contract. But that provision also notes that "[a]ny individual agency orders with [FCSO] shall clearly define the additional services and/or procedures, a reasonable price, if any, and state that all other terms and conditions of this [contract] remain in effect." Because the United States has identified nothing in the record to show that it requested FCSO transport Thiersaint on the occasions in question, it certainly has not identified anything that would meet the additional requirements for "individual agency orders" set out in this provision.

- 29 -

prescription of one year," because that state law is a statute of repose rather than a statute of limitations.[13]

The District Court relied on out-of-circuit cases that held that state statutes of limitations, because they are procedural in nature, are preempted by the FTCA's two-year statute of limitations, while state statutes of repose are substantive in nature and thus are not preempted by the FTCA statute of limitations. See Anderson v. United States, 669 F.3d 161, 165 (4th Cir. 2011); Augutis v. United States, 732 F.3d 749, 754 (7th Cir. 2013). If those cases are correct and the District Court is correct that article 3492 is a statute of repose, then this set of Thiersaint's claims would be time-barred. After all, Thiersaint did not file them within one year of when his causes of action accrued. But if article 3492 is a statute of limitations, as Thiersaint contends is the case, then, even if those cases are correct, these claims would not be time-barred, because article 3492 would be preempted by the FTCA's two-year statute of limitations. Indeed, the United States does not contend otherwise.

---

[13] The United States suggests that Thiersaint has waived his Louisiana detention-based claims by addressing only the time-bar issue and not the merits of them. But the District Court did not base its award of summary judgment on the merits of those claims, and the United States develops no argument as to how we could affirm that grant on the ground that there is no evidence in the record that could permit a rational factfinder to find for Thiersaint on these claims insofar as they are timely.

The Supreme Court of Louisiana has held that article 3492 "provides a prescriptive period rather than a peremptive period," Jenkins v. Starns, 85 So. 3d 612, 627 (La. 2012), and a "prescriptive period" is understood as a statute of limitations in Louisiana, while a "peremptive period" is understood as a statute of repose. See In re Med. Rev. Panel for Claim of Moses, 788 So. 2d 1173, 1179 (La. 2001) (describing, in another context, a "hybrid statute" which contained "both a one-year prescriptive period . . . and a three-year repose period"). Moreover, article 3492 refers to the time limit that it establishes as a "liberative prescription of one year," and a "liberative prescription" is, per Black's Law Dictionary, "essentially the civil-law equivalent of a statute of limitations." Prescription, Black's Law Dictionary (11th ed. 2019).

Notably, the United States advances no argument that, even though Louisiana treats article 3492 as a statute of limitations rather than a statute of repose, it is a statute of repose rather than a statute of limitations for purposes of the FTCA. Thus, because state statutes of limitations are preempted by the FTCA's statute of limitations, Poindexter v. United States, 647 F.2d 34, 36 (9th Cir. 1981) ("It is long settled . . . that the statute of limitations in the FTCA . . . governs in FTCA actions, even when the state period of limitations is longer or shorter." (citation omitted)), Thiersaint's claims as they pertain

- 31 -

to his detention in Louisiana are not time-barred by article 3492, as that provision is preempted by the two-year FTCA statute of limitations, and he filed his relevant claims within that period. Accordingly, we vacate the District Court's grant of summary judgment to the United States as it pertains to Thiersaint's Louisiana detention-based claims.[14]

**V.**

We come, then, to Thiersaint's challenge to the District Court's grant of summary judgment to SCSD on his RHA and ADA claims. In these claims, Thiersaint alleges that SCSD violated these statutes by housing him in the Medical Housing Unit ("MHU") during his February 2016 detention at the SCHC.[15] But the District Court determined, as a matter of law, that Thiersaint's detention in the MHU violated neither statute and granted SCSD summary judgment on these claims on that basis.

Thiersaint argues to us that the District Court erred in so ruling because it only considered whether his initial placement in the MHU violated those statutes and so failed to consider

---

[14] The District Court also granted summary judgment to the United States on Thiersaint's detention-based claims in Florida and in Massachusetts. Thiersaint does not appear to contest those holdings, so we have no occasion to address them here.

[15] Thiersaint also claimed below that the United States "violated the Rehabilitation Act by acquiescing to SCSD's discriminatory policies." The District Court granted summary judgment to the United States on this claim, and Thiersaint does not appear to contest this grant on appeal.

whether his _continued_ detention in the MHU, even after he was cleared to be detained in the general population, violated those same statutes.  He further contends that his continued detention in the MHU did violate both statutes.  SCSD contends in response that the District Court did in fact consider both Thiersaint's initial placement in the MHU and his "continued" detention in the MHU in granting summary judgment against Thiersaint and that its grant of summary judgment was proper.

To survive summary judgment on his ADA claims, Thiersaint must show that a rational factfinder supportably could find that he has shown "(1) that he is a qualified individual with a disability; (2) that he was excluded from participating in, or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability."  Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 283 (1st Cir. 2006) (quoting Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000)).  Similarly, to survive summary judgment on his RHA-based claims, he must show that a rational factfinder supportably could find that he has shown "(1) that [he] is disabled; (2) that [he] sought services from a federally funded entity; (3) that [he] was 'otherwise qualified' to receive those services; and (4) that [he] was denied those services 'solely by

reason of [his] . . . disability.'" Lesley v. Hee Man Chie, 250 F.3d 47, 53 (1st Cir. 2001) (quoting 29 U.S.C. § 794(a)).

Thiersaint asserts that the record supportably shows that the decision to continue to detain him in the MHU even after he was cleared to be detained in the general population was discriminatory on the basis of his disability "because it could only have been based upon 'stereotypes of the disabled rather than an individualized inquiry into [his] condition'" (quoting Lesley, 250 F.3d at 55). But he points to nothing in the record to support this contention, and his inability to do so is fatal at the summary-judgment stage as to both his ADA and his RHA claims. See Forestier Fradera v. Mun. of Mayagüez, 440 F.3d 17, 21-23 (1st Cir. 2006). Thus, the District Court did not err in awarding summary judgment to SCSD on Thiersaint's RHA and ADA claims.[16] See id. at 23 (affirming an award of summary judgment to the defendant in an ADA suit when "[t]he record simply lacks any reasonable basis for an inference" that the alleged discriminatory action was taken because of the plaintiff's disability).

**VI.**

We **affirm** the District Court's award of summary judgment to SCSD on all relevant counts, but we **vacate** the District Court's

---

[16] For the same reasons, we affirm the District Court's award of summary judgment to SCSD on Thiersaint's claims related to the denial of access to "services, programs, and activities" due to his housing in the MHU.

- 34 -

award of summary judgment to the United States on all grounds and **remand** to the District Court for further proceedings consistent with this opinion.[17]  Costs are to be taxed against the United States.

---

[17] Thiersaint alleged in his operative complaint that the United States is liable for negligent supervision in Connecticut, Massachusetts, New Jersey, Louisiana, and Florida.  The District Court granted summary judgment to the United States on these allegations.  Thiersaint does not appear to contest that grant on appeal, so we have no occasion to address it.